### CARLOS BAXTER *v.* WINOOSKI TURNPIKE COMPANY.

To enable a person to maintain a private action for a public nuisance, he must have sustained some damage, more peculiar to himself than to others, in addition to the inconvenience common to all.

It is sufficient to give a private action for the erection of a nuisance upon a public highway, if there be peculiar or special damage resulting to the plaintiff therefrom, though consequential, and not direct.

But a claim for damages arising from the plaintiffs not attempting, at certain times, to travel a public highway, because of its general badness, is hypothetical, and does not constitute such peculiar damage, as to give a private action for a public nuisance.

But in this state, where, by statute, towns are laid under obligation to keep and maintain their public highways and bridges in repair, and are made liable to indictment for neglect in this particular, it is only by force of the statute, that an individual, who sustains special damage through such neglect, can maintain a suit therefor against the town.

And in order to sustain such action in favor of an individual, upon the statute, the damage complained of must not only be *special*, in the language of the statute, but *direct*, either to the person of the traveller, to his team, carriage, or other property, and it must result to the person of the traveller, or his property, while he, or his property, was in a state of transition over the highway.

Under the charter of the Winooski Turnpike Company, incorporated by the legislature of this state in 1805, by which it was provided, that the corporation should be liable to pay " *all damages*," which should happen to any person, from whom toll should be demandable, which might arise from want of repair of their road, the liability of the corporation is co-extensive with that of towns.

And that corporation is not liable, in an action upon the case, brought by one who has occasion to use their road, and is liable to pay toll for *such use*, for any general damages, which the plaintiff may have sustained in carrying on his business, whether such damages resulted from his not attempting to travel the road at particular times, by reason of its general badness and insufficiency, or from not being able to travel it as expeditiously, and carry as large loads, as he otherwise might and would have done.

The county court may, in their discretion, if they are satisfied, that no cause of action is stated in the declaration and none proved on trial, stop the cause on trial and direct a verdict for the defendant, although the defendant has traversed the declaration, instead of demurring to it, and the evidence is compe-

tent and sufficient to prove the declaration,—although it is not error for the court to allow the case to proceed and leave the issue to be found against the defendant, and let him relieve himself from the verdict as he best may.

It is not competent for a plaintiff to declare with a *continuando*, for injuries occasioned by the obstruction, or insufficiency, of a highway, or to allege a repetition of such injuries upon divers days and times between a day specified and the commencement of the suit. It is the *per quod*, in such case, which is the *gravamen* of the action, and not the insufficiency of the road; and the injury sustained at any one time cannot be continued, or repeated.

Where the injury, in such case, is improperly laid in the declaration with a *continuando* the plaintiff, without any waiver on his part, may, upon the objection of the defendant, be confined in his proof to a single injury, though the defect, in the manner of alleging the injury, might be ground for a special demurrer.

In an action against a turnpike corporation for excavating earth from the sides of their road, against the plaintiff's land, whereby the plaintiff's fences were thrown *down, the cou*rt charged the jury, that the defendant had the right to use the soil, within the limits of their road, in a reasonable manner, for the repair of the road, either where it crossed the plaintiff's land, or in other parts of the road, where it crossed the land of other persons, contiguous to the plaintiff's land, provided they used reasonable care and prudence in reference to the rights of the plaintiff, in so doing;—and it was held, that herein there was no error.*

TRESPASS ON THE CASE. The plaintiff alleged, in the first and second counts in his declaration, in substance, that the defendants were a corporation, duly authorized to construct and maintain a turnpike road between Burlington and Montpelier, and to receive toll from persons travelling thereon, and bound to keep the same in sufficient repair, and liable to any person travelling thereon, from whom toll was demandable, for all damages sustained by them in consequence of any want of repairs of said road, and that they had constructed their road, and erected turnpike gates thereon, at which they demanded and received toll; and that the plaintiff was the owner of a large tract of land, as well woodland as pasturage and tillage, situated in Burlington, upon the line of said turnpike, and between which and the village of Burlington the said road formed the necessary and only means of pas-

---

* See *Felch* v. *Gilman et al., ante,* page 38.

sage and communication, and that the plaintiff, during the time specified in these counts, in order to transact his necessary business, was compelled frequently to pass and repass, and transport the produce of said land, to a very large amount each year, along said road, to the village of Burlington and Lake Champlain and other places adjacent, and was liable to pay and did pay toll to said defendants; and that, during the same period, that portion of said turnpike, over which the plaintiff was thus required to pass, was, by the gross neglect of the defendants to repair the same, wholly defective, out of repair and insufficient and dangerous for the purposes of travel thereon, and was, from time to time, wholly impassable,— whereby the plaintiff, during the same period, was greatly impeded and delayed in conveying his said produce to Burlington, as the season and his business required, and in transacting his usual and necessary business to and from his said land, and, during a large portion of the same period, was wholly prevented from so conveying his said produce, and from transacting his said necessary business, along said road, whereby he was deprived of great gains and profits, which he would have derived from the conveyance and sale of his said produce, and incurred great loss and expense in being so hindered and delayed, and in being so prevented from transacting his necessary business, and in being unable to so use and work the teams kept by him. In the third count the plaintiff averred, as cause of action, that on the first day of September, 1841, " and on divers other days between that day and the commencement of this suit," his horses, wagons, oxen and carts, in passing over said road on the plaintiff's necessary business, wholly through the defects and want of repair of said road, were mired, and were driven into ruts, sloughs and holes and over stones and rocks in said road, and were thereby greatly injured and destroyed. In the fourth count the plaintiff alleged, that the said road passed through his land, and he had erected fences at the sides thereof, which were necessary for the protection of his land, and that the defendants had unlawfully excavated divers large and deep holes and pits in the earth, so near to the plaintiff's fences as to cause the earth to fall away from them, and the fences to be thereby broken, prostrated and destroyed. Plea, the general issue, and trial by the jury, September Term, 1848,—BENNETT, J., presiding.

On trial the court held, that though it might be true, that the plaintiff had occasion to travel the road in question in the manner alleged in the declaration, yet that he could not recover for any general damages, which he might sustain in carrying on his business, whether they resulted from his not attempting to travel the road at particular times, by reason of its general badness and insufficiency, or from his not being able to travel it as expeditiously and carry as large loads, as he otherwise might and would have done, had it not have been for the insufficiency of the road ; and under this ruling of the court, all the plaintiff's evidence, tending to show such general damages, was excluded ;—to which ruling of the court the plaintiff excepted.

Under the third count the court held, that the plaintiff must be confined to proof of an injury sustained at some one time, while travelling the road, on account of its insufficiency, but might take his election ; and under this ruling the plaintiff's evidence was excluded, tending to show, that he sustained special damages at any other time, except on the occasion for which he elected to proceed ; —and to this ruling the plaintiff also excepted.

Under the fourth count the plaintiff gave evidence tending to prove, that the defendants, during one season, dug clay from the sides of the road, where it crossed the land of the plaintiff, for the purpose of conveying it to the sandy part of the road, and that it was so conveyed and deposited in the road,—a part upon the road on the plaintiff's land, and the residue on parts of the road contiguous thereto, but after it had left the plaintiff's land and crossed the land of other persons,—and that the defendants were wanting in proper care and prudence, in reference to the plaintiff's rights, and dug their clay pits so near the plaintiff's fence, as to endanger its safety, and that, in consequence of these clay pits, in the spring of the year, when the frost was leaving the ground, some portion of the plaintiff's fence was prostrated, doing him damage.

The evidence on the part of the defendants tended to prove, that in order to render the sandy part of the road, where the clay had been deposited, suitable to travel and draw loads over with ease, it was necessary and proper to carry on clay, to mix with the sand, and that there was no place in the highway, where they could procure the clay so conveniently, as at the place where they obtained

it; and that there was none to be had on the sandy part of the road, where the clay in question was deposited; and that they used ordinary care and prudence in digging the clay, so as not to endanger or injure the plaintiff's fence by reason thereof; and that the plaintiff's fence was not thereby injured.

The court charged the jury, upon this part of the case, that the defendants had the right to use the soil in the highway in a reasonable manner for the repair of the road, and that it was immaterial, whether they used the clay, or soil, taken from the sides of the road opposite to the plaintiff's land, in repairing the road running through the plaintiff's land, or in repairing the road contiguous to the plaintiff's land, and after it had passed from the plaintiff's land, provided the jury should find, that it was proper and necessary, that clay should be drawn upon the sandy part of the highway, in order to make it a good and suitable road, and that this was the most convenient place, where clay could be obtained in the highway, for the purpose of being carried on to the sandy parts of the road; but that in so doing the defendants were bound to use ordinary care and prudence in reference to the rights of the plaintiff, as the owner of the land opposite, and to conduct in such a way, as they had good reason to suppose would not endanger and injure the plaintiff's fence; and that, if the defendants so conducted, they would not be liable, though it should afterwards result, that the plaintiff's fence was injured by reason of the digging; but that, if the defendants were wanting in ordinary care and prudence in regard to the rights of the plaintiff, and in consequence of the digging the plaintiff's fences were prostrated, they would be liable for the damages resulting from the digging; and that, if the defendants were liable, the jury would give such damages as had already been sustained, and also give compensation for such damages, as might thereafter be reasonably expected to accrue therefrom.

The jury returned a verdict for the plaintiff. The plaintiff excepted to so much of the charge, as has been detailed.

*Smalley & Phelps* for plaintiff.

I. The evidence offered in support of the first and second counts should have been received.

1. It is conceded, that it was pertinent and sufficient to sustain,

on the part of the plaintiff, the issue joined on those counts; but it was excluded upon the ground, that those counts did not set forth a sufficient cause of action. It is a well settled rule of pleading, that the general issue puts on trial the truth of the declaration, not its sufficiency. The defendant might demur, or move in arrest; but if he choose to make an issue, it is the right of the plaintiff to have it tried upon the evidence. *Cort v. Bickbee,* 1 Dougl. 218. *Gibson et al. v. Hunter,* 2 H. Bl. 205. Bul. N. P. 313. *Richardson v. R. & W. Turnp. Co.,* 6 Vt. 496.

2. The damages set forth in the first and second counts are of a character to entitle the plaintiff to sustain the action. They are fully within the letter, as well as the spirit, of the provisions of the defendants' charter. Acts of 1805, pp. 154–161. They result directly from the wrongful acts of the defendants,—are definite, appreciable and serious. It is true, that a mere inconvenience, common to the whole public, will not authorize a recovery; but whenever a party has sustained distinct injury, or loss, peculiar to himself, of the nature stated in the declaration, from the wrongful act, or neglect, of another, even though it constitute a public nuisance, he is entitled to recover in an action for his damages. *Iveson v. Moore,* 1 Ld. Raym. 486. *Hart v. Bassett,* 4 Vin. 419. *Maynell v. Saltmarsh,* 1 Keb. 847. *Rose v. Miles,* 4 M. & S. 101. *Greasly v. Codling,* 2 Bing. 263, [9 E. C. L. 407.] *Wiggins v. Boddington,* 3 C. & P. 544, [14 E. C. L. 439.] *Bateman v. Burge,* 6 C. & P. 391, [25 E. C. L. 454.] *Wilkes v. Hungerford Market Co.,* 2 Bing N. C. 281, [29 E. C. L. 338.] *Burrows v. Pixley,* 1 Root 362. *Pierce v. Dart,* 7 Cow. 604. *Squier v. Gould,* 14 Wend. 159. *Hubert v. Groves,* 1 Esp. R. 148, is the only case to the contrary, and has been repeatedly overruled. 29 E. C. L. 338. 7 Cow. 609. 1 M. & S. 101.

II. The court erred, in restricting the plaintiff to proof of a single instance of injury under the third count. The cause of action declared upon is the neglect to keep a certain portion of the road in repair during the time specified. That is a single tort, and, being continuous in its character, may be laid with a *continuando,* as extending from one day to another. Gould's Pl. 102–105. 1 Saund. R. 24, n.

III. The fee of the land, over which a turnpike passes, remains

in the original proprietor, subject to the public easement; *Hooker* v. *U. & M. Turnp. Co.*, 12 Wend. 371; and the soil cannot be taken away, to any extent, at the mere convenience of the proprietors of the road.

*A. Peck* for defendants.

In order to recover against the defendants in a civil action, for damages sustained by reason of defect or want of repair in the road, the plaintiff must show, that he has sustained some *special damage.* For damages sustained by the plaintiff in common with the rest of community there is no other remedy, than by indictment. This is the rule at common law, not only in case of damage by obstructions in the highway by the tortious act of the defendant, but in cases of injuries for want of repairs. Co. Lit. 56 *a.* The reason of this rule is stronger, and the principle is carried farther, against a civil suit, when the action is for a non-feasance and founded on the defendant's liability to repair, than when it is for some positive obstruction, erected by a tortious act. 4 Bl. Com. 167. *Iveson* v. *Moore*, 1 Salk. 15. *Paine* v. *Patrick*, Carth. 191. *Fineaux* v. *Hovenden*, Cro. El. 664. *Hubert* v. *Groves*, 1 Esp. R. 148.

Cases, where a party has been entirely prevented from passing, by some obstruction interposed, while he was in the actual use of the road, whereby special damage has ensued, are distinguishable from the case at bar,—first, because the injury is a direct consequence of a positive tort, while in the case at bar it is but a non-feasance, or breach of duty to repair,—secondly, in those cases the damage complained of is limited to those, who are in the act of using the road, when the obstruction is interposed,—while in the case at bar the injury is the same to all the public, as to the plaintiff. It is not sufficient for the plaintiff to show an injury to him to a greater extent, than to the rest of the public; it must be of a different and special character.

The statute imposing the liability on towns is limited in terms to cases of *special* damage; and as the defendants, by their act of incorporation, take upon themselves the duty of constructing and keeping in repair the road, the right of action against them was evidently intended to be merely co-extensive with the remedy against towns,—especially as a remedy by indictment is also given in the act of incorporation.

As the defendants have paid damages to the land owners for the right to build the road across their land, they have a right to use the earth for that purpose, as they judge proper, provided they use ordinary diligence and do not wantonly injure the adjoining proprietors.

Under the third count the plaintiff was not entitled to show more than one instance, in which he sustained special damage, as such injuries are not *continuous* and *permanent* in their nature. Gould's Pl. 102, ch. 3, sec. 86–95. *Michell* v. *Neale*, Cowp. 828. *Brook* v. *Bishopp*, 2 Salk. 639.

The opinion of the court was delivered by

BENNETT, J. It is to be taken, in this case, that the business of the plaintiff called upon him to use the road in the manner set forth in the two first counts in his declaration; and the first question is, was the county court right, as matter of law, in holding that the plaintiff could not recover for any *general damages,* which he might have sustained, whether they resulted from his not attempting to travel the road, at particular times, on account of its general insufficiency, or from his not being able to travel it as expeditiously and carry as large loads, as he might and otherwise would have done.

To enable a person to maintain a private action for the erection of a *public nuisance,* he must have sustained some damage *more peculiar* to himself than to others, in addition to the inconvenience common to all; and I understand this position to be admitted by the plaintiff's counsel. Unless this were the rule, the doctrine, that a *public nuisance* is to be proceeded against *only* by indictment, would be abrogated. Though the general rule is well settled, yet questions have often arisen in respect to its application; and in regard to *what* shall constitute such a *peculiar* damage, as to give the right of a private action, there seems to be some conflict in the cases.

Some have assumed the ground, that the injury must not only be *peculiar* to the party, but also *direct,* and not *consequential;* and of this description are the cases of *Paine* v. *Patrick,* Carth. 194, and *Hubert* v. *Groves,* 1 Esp. R. 148. In the latter case it appeared, that the plaintiff had, by reason of the obstruction of the public highway, been prevented from carrying on his business in so advantageous a manner, as he had a right to do, and was obliged to draw

his coal, timber, &c., by a *circuitous* and inconvenient way; yet Lord KENYON nonsuited the plaintiff, and the king's bench refused to set aside the nonsuit. The opinion of Lord HOLT, in the case of *Iveson* v. *Moore*, 1 Ld. Raym. 486, seems to be based upon the same ground; and though the court of king's bench were equally divided in opinion, yet, upon consultation before all the justices of the common pleas and barons of the exchequer, they were all of opinion that the action well lay.

The grounds of that opinion I am not aware are in print; but from a manuscript note made by WILLES, chief justice of the common pleas, it would appear, that the reason, which the judges mainly went upon, was, that it sufficiently appeared, that the plaintiff must and did suffer special damage, more than others, because it was set forth, that the *only* way to come to the plaintiff's coal pits from one part of the country was through the obstructed way; and consequently they thought, without an averment of the loss of customers, it should be taken, that the plaintiff had suffered *particularly* in respect to his trade, by the defendant's wrong. See Willes' R. 74, note *a*. The case came up upon a motion in arrest for the insufficiency of the declaration, and the allegation was, that the way was stopped up, so that carts and carriages could not come to the plaintiff's colliery.

I consider, however, at the present day, that the decided balance of authority sustains the position, that it is sufficient to give a private action for the erection of a nuisance upon a public highway, if there be *peculiar* or *special* damage resulting therefrom, though *consequential*, and not *direct*. The case of *Wilkes* v. *Hungerford Market Co.*, 2 Bing. N. C. 281, [29 E. C. L. 336,] and many others are of that description.

The claim, which the plaintiff made for damages arising from his not attempting, at certain times, to travel the road, because of its general badness, is hypothetical; and I apprehend, that there is no case, which would warrant the position, that this could constitute such *peculiar damage*, as to give a private action for a public nuisance. If, however, this were an action on the case at the common law, to recover damages for an obstruction of the highway by some positive act, whereby the plaintiff was delayed in passing it, or enabled to carry less loads, than he otherwise might and would have

carried, it might well admit of a question, whether this would not be such a special damage, as to give a private action.    The case of *Hart* v. *Bassett,* T. Jones' R. 156, 4 Vin. 459, was one, in which the plaintiff was entitled to receive *tithes,* and, by means of the obstruction, was forced to carry them a *circuitous route.*   The allegation in the declaration was, that he was forced to carry them a *longer* and *more difficult way.*   This was the only damage proved on trial, yet the action was held well to lay.

The case of *Rose* v. *Miles,* 4 M. & S. 101, was where the plaintiffs were compelled to carry their goods *over land,* at an increased expense, in consequence of the defendants mooring a barge across a public navigable canal.   If a person is hindered and impeded in the transportation of his goods, by reason of obstructions, the injury seems to be of the same kind, though perhaps less in degree, than if he was compelled to take a *circuitous route.*   There are other cases analo*gous in principle.*

But we do not think it necessary to decide the question, whether the evidence offered under the two first counts showed such a *special* injury, as would, upon common law principles, have given a private action, in the case of an obstruction, raised by the wrongful act of an individual.   In this state towns, by statute, are laid under obligation to keep and maintain their public highways and bridges in sufficient repair, and, for neglect in this particular, are liable to indictment.   The statute also provides, that if any *special* damage shall happen to any *person,* his *team, carriage,* or *other property,* by reason of the insufficiency of any highway, or bridge, in any town, which such town is liable to keep in repair, the person sustaining such damage shall have a *right* to recover the same in an action on the case.

I take it to be well settled, that if the statute had not given the action, no individual, who had sustained special damage through the neglect of the town to repair their roads, could maintain a suit.   It may be said, that where an individual sustains an injury by the neglect or default of another, the law gives a remedy.   But that principle does not apply, where the public are concerned, as it may well be said, that it is better that an individual should sustain an injury, than that the public should suffer an inconvenience.   In Brooke's Abr., Tit. Action on the Case, *pl.* 93, it is said, if a highway be out

of repair, by which a horse is mired, (to his injury,) no action lies. The reason assigned is, that the public are bound to repair, and the remedy is by presentment. Upon the authority of the case cited in Brooke, the court of king's bench, in the case of *Russell et al.* v. *Inh. of the County of Devon*, 2 T. R. 667, held, that no action would lay against the county, to recover damages for an injury ·sustained by reason of a bridge being out of repair, which the county were bound to repair.

If, then, upon common law principles, no action could be maintained against a town for an injury growing out of their neglect, recourse must be had to the statute, to learn how far they are made liable to a civil action. We think, it must not only be a *special* damage, in the language of the statute, but *direct*, either to the person of the traveller, to his team, carriage, or other property, and that the damage complained of must result to the person of the traveller, or his property, while he, or the property, was in a state of transition over the road, or bridge. In the connection in which it is used, it is evident, that the statute, though it uses the expression " to *any* person," has allusion to the rights of the person of the traveller; and we think, it was the intention of the legislature, in the use of the words " or other property," following the words " team," or " carriage," to confine the statute to such property, as should be on the road. If the expression " or other property" is to be understood in an unlimited sense, it would seem to follow, that if the insufficiency of the road operated to the injury of the traveller's estate, though remotely and indirectly, as by compelling him to be at the expense and loss of time in traversing a *longer* and *more difficult way*, as in the case of *Hart* v. *Bassett*, he would have his private action. We do not think the legislature intended any such latitude of construction.

If this be so, how do the defendants stand? They were incorporated in 1805, and are made liable to indictment for the insufficiency of the road, the same as towns. The statute also declares, that " they shall be liable to pay all damages, which may happen to any person, from whom toll is demandable, which may arise from want of repairs on said road." See Acts of 1805, p. 154, sec. 5. Though the expression, " *all damages*," may seem broader than the act in relation to towns, yet we think it was only the intention of the

legislature to substitute this corporation in the place of the town, and to make their liability co-extensive with that of towns. No reason is perceived, why it should be more onerous than that of towns. The town is relieved from all liability, as it respects this road; the public have their remedy by indictment; and why should the rights to individuals be more extended, than against towns? In the charter of the Royalton and Woodstock Turnpike Company, granted in 1800, the phraseology in regard to their liability is the same, as in the defendants' charter; and in the case of *Richardson et al.* v. *R. & W. Turnpike Co.*, 6 Vt. 496, it was held, that they were liable only to the same extent as towns under the general statute. We then come to the conclusion, that the court below were right in regard to the substance of the thing, that is, that the testimony offered under the two first counts would not lay the ground of a legal right to recover, though the offer were proved to its full extent.

The question then arises, was it error in the county court, upon the proceedings in this case, not to submit the evidence to the jury and have the plaintiff's damages assessed under these counts? I am aware, it has been said, that if the defendant plead the general issue, he cannot object to the evidence, or to a verdict's being found for the plaintiff, if the evidence prove the declaration, though the declaration do not set up any legal cause of action. I apprehend, that this position needs, at least, some qualification, and that the court may, in their discretion, if they are satisfied that no cause of action is stated in the declaration and none proved on trial, stop the cause on trial, although the defendant have traversed the declaration, instead of demurring to it. It does not follow from this, that it would be error in the court not to do it, and to leave the issue to be found against the defendant, and let him get rid of the verdict in the best way he can.

In England the practice is, if the plaintiff fail to prove every fact necessary to support the action, or if the facts proved are insufficient in law to maintain an action, the court direct the plaintiff called. 1 Sellon's Prac. 462. In *Hubert* v. *Groves*, 1 Esp. R. 148, the court ordered the plaintiff called; yet in that case the plaintiff had proved the declaration, and the only question was, whether that set out a legal cause of action. That case went to trial under a plea

of not guilty. And though the court cannot nonsuit the plaintiff against his consent, yet if he persist in answering, when called, the court will direct a verdict against him.    Sellon's Pr. 464.

We have not adopted the practice of directing the plaintiff called, but our practice has been, in such case, to direct a verdict for the defendant, unless the plaintiff shall elect to become nonsuit.    In the case of *Smith* v. *Joiner et al.*, 1 D. Ch. 64, the evidence showed a cause of action against the defendant, but the action should have been brought in the name of the sheriff, and not by the deputy, as it was.    The court say, as this matter appears upon the face of the declaration, it should have been demurred to, but is fatal under the general issue; and a verdict was directed for the defendant.    The case of *Gleason* v. *Peck et al.*, 12 Vt. 56, was an *audita querela,* and the plea not guilty; and though the complaint was proved against one of the defendants, yet the court below decided the action could not be maintained against either.    The declaration would have been held bad on demurrer.    The judge, who gave the opinion of the court, seemed to think, that if the issue had been to the jury, the verdict must have been against such defendant; but I apprehend, it is immaterial, whether the issue be to the court, or jury. Though the court do not in form render a verdict, yet they find the issue; and if they find the issue for the plaintiff and give judgment in his favor, upon a declaration that sets forth no cause of action, it will be reversed upon error; and I apprehend the court, on motion, would arrest judgment.

The point decided in the case of *Barney* v. *Bliss et al.*, 2 Aik. 60, went simply to show, that if the matter in a plea amounted to no defence, and the plaintiff took issue upon it, it was not error for the court to admit legal evidence to prove the issue, and to direct the jury, if proved, to return a verdict for the defendant.    The point now before us was not in the case of *French* v. *Thompson*, 6 Vt. 58.    In that case the county court charged the jury, that a valid promise was proved, and the jury found for the plaintiff.    The case does not establish the position, that if the promise set forth in the declaration and proved had been void, it would have been error for the county court, if they had thought proper, to have directed a verdict for the defendant,—though perhaps the reasoning of the learned judge goes that length.

Baxter *v.* Winooski Turnp. Co.

It is said, that in such case the plaintiff is entitled to a verdict, because, if it is set aside upon a motion in arrest, the defendant recovers no costs. But I do not apprehend this is a sufficient reason, why the court should be compelled to do a nugatory act,—especially as the plaintiff is first in fault in pleading. If the declaration were defective for the want of some averment, which would be cured by verdict, and the proof were sufficient, the court doubtless should direct the issue to be found for the plaintiff. It has been frequently held by this court, that when a case comes up upon exceptions, they will look into the whole record, and if, upon the whole record, the judgment of the county court was correct, it will be affirmed, though there may have been error in the decision of the county court upon the point to which the exceptions were taken. We think the judgment of the county court cannot be reversed upon any exception taken to the proceedings of that court upon the two first counts.

It is claimed, that there was error in the county court, in not confining the plaintiff, under his third count, to some one single injury, accruing at some one time, when the plaintiff was passing over the road. It is familiar law, that if a trespass be of such a nature, that it may either be continued, or repeated, the plaintiff may declare strictly with a *continuando*, or in the mode adopted in the present case. If, however, the trespass cannot be continued, or repeated, you cannot so declare. *Monkton* v. *Pashley*, 2 Salk. 638. 9 Bacon's Abr. 511. In the case of the obstruction, or insufficiency, of a public highway, it is the *per quod*, which is the *gravamen* of the action,—not the insufficiency of the road. The injury sustained at any one time cannot be continued, or repeated. The injuries sustained on different days, while passing the road, must, from their very nature, be distinct and independent. There could be no more a continuation, or repetition, of the injury, than in the case of taking the plaintiff's horse. It is undoubtedly true, that for an injury from the obstruction of a *private* right of way, the declaration may be with a *continuando*, and the difference is, that in the latter case the *gravamen* of the action is the stoppage of the way, which may well be continued. Where the injury is improperly laid with a *continuando*, the plaintiff, without any waiver on his part, may, upon the objection of the defendant, be confined in his proof to a

single injury, though it might be the ground of a special demurrer. Gould's Pl. 107, sec. 95.

This court are satisfied with the charge of the court below under the fourth count in the declaration. The damages are, or should be, assessed to the landholders with the expectation, that the public may take materials from the highway for the purpose of building or repairing the road. The question as to the right, raised in this case, was decided some years since in Windsor County, where timber was cut upon the limits of the highway to repair a bridge; and the true rule was laid down by the county court as to the care, which the public should use in regard to the landholders' rights. Upon recurring to the declaration, it will be found, that there is no complaint, that the defendants carried the clay, dug upon the highway opposite to the plaintiff's land, beyond the line of his farm and there to be used on the highway. But if this question arose on the declaration, we should be satisfied with the ruling of the county court.

The judgment of the county court is affirmed.