JOSEPH HATCH, *qui tam v.* S. ROBINSON & CO.

SAME *v.* JAMES WADE.

*Penal statutes.    Flour Inspector, &c.    Act of* 1850.    *Inspection of Flour.*

Flour inspectors are not the "persons injured" within the meaning of the act of 1850, by the sale of flour required to be inspected, without procuring the same to be inspected, and they cannot sustain an action on the statute for the penalty of such sale, as inspectors of flour.

The public at large, the dealers in flour, and not flour inspectors, are intended to be protected by the statute.

THESE were actions on the statute; one brought to recover the penalties for selling flour without having been inspected; the other brought to recover the penalty for inspecting flour, without having been duly appointed to that office.

Both cases were tried on demurrer; and the County Court,—PIERPOINT, J., presiding,—rendered judgment in both cases that the declaration was insufficient, and for the defendants to recover their costs. The facts sufficiently appear in the opinion of the court.

Exceptions by plaintiff.

*W. W. Peck* for plaintiff.

*Smalley & White* for defendants, Robinson & Co.

*Peck & Bailey* for defendant, Wade.

Hatch *v.* Robinson & Co., and Same *v.* Wade.

The opinion of the court was delivered by

REDFIELD, Ch. J.   The first of these cases is brought to re-cover the statute penalty for selling flour, required to be inspect-ed, without procuring the same to be inspected; the plaintiff being at the time, the legally appointed and qualified inspector of flour in the towns where such sales were made; and as such entitled to inspect and brand such flour or casks, and to demand and receive the statute fees for the same.   The second action is brought to re-cover the penalty for usurping the functions of the office of flour inspector, without having been duly appointed to the same, thus lessening plaintiff's emoluments.   The penalties, in both cases are given to the party, or " person injured."   A preliminary question, decisive of the action in one event, then arises, whether this plain-tiff is the person injured, within the meaning of the statute.   The question is a very narrow one, and one upon which we can derive little light, from the general rules, in regard to the construction of statutes.   Whether the statute is strictly or liberally expounded, according to the letter or the spirit, *ut res magis valeat vel pereat,* seems of little significance.   The question, after all, is, what is the reasonable purport, force and effect of the statute ?   And whether the law will be likely to be more strenuously or fully enforced, in one view, than in another, can have no controlling effect in deter-mining its construction.   We have no doubt the legislature intend-ed to have the statute enforced, and we presume the change in regard to the mode of bringing the action for penalties, upon this subject, made in 1850, might have been intended to secure the more certain enforcement of the penal sanctions of the statute, or at least that this was the probable purpose and expectation of the large number of the members.   But if the change, through misjudg-ment, or inadvertance, or the indiscretion of some interested per-sons in or about the legislature, should prove to have virtually produced an opposite effect, it will not be the first time such re-sults have come about, in similar modes, and could afford no just grounds for giving the statute a forced construction, in order to abate such consequences.

The question, after all, recurs, is the plaintiff the person ag-grieved or injured, in either or both these cases.   And the cases seem to us to be sufficiently analogous, in that respect, to admit of, and probably to merit a similar determination.   For in some

probable and remote sense, it may well be conjectured, that the plaintiff has suffered injury or damage, in both cases.  One who takes an office to which fees are attached, may fairly be presumed, perhaps, to derive some profit from his fees, and some injury from the loss of such emoluments.  But the question really is, was it the purpose, or fairly within the probable design of the statute, as gathered from its terms, to protect the right of flour inspectors to their fees?

After considerable examination, and a good deal of reflection upon the subject, it seems to us impossible to answer this inquiry in the affirmative.  We think the terms, person injured or aggrieved, in the common language of statutes, giving rights of action or penalties to such persons, must be regarded as extending only to such persons as are immediately injured, by the very act prohibited, or by some direct and immediate, or necessary and natural consequences of such act; and that persons only collaterally or incidentally injured by such act, are not ordinarily regarded as coming within the purview of the statute.  It has been considered, that if a certain act be required by a statute, or a certain duty of persons, whether natural or artificial, and no specific remedy pointed out, that the party benefitted by the duty, or injured by its omission, may recover all damages sustained *by an action upon the statute,* and many statutes give an action, for all damages sustained to the *party injured,* and where a penalty is given, and no specific mode of recovery pointed out in the statute, it may be enforced, by indictment, where no person is named to take the penalty.  But in none of these cases was it ever held, that one indirectly and remotely injured, might sue, to recover either damage sustained, or a penalty.  *Baxter* v. *Winooski Turnpike Co.,* 22 Vt. 114.

The very case before the court, if carried beyond the party injured, directly by the sale, may be carried to any extent.  There is no limitation.  And unless we confine the right of action to the parties, to the sale prohibited, it certainly admits of an indefinite extension.  Who are the parties aggrieved by exporting flour, or by offering it for sale, is a question more easily asked than satisfactorily answered, it must be confessed.  But we cannot suppose that the legislature, in affixing any of these penalties, had in mind the protection of the rights or interests of flour inspectors.

It is obvious their rights or emoluments, do not, in any sense, enter into the purpose of the statute. It is for altogether a very different object. And it could never have entered the mind of any member of the legislature, that flour inspectors were the persons likely to be injured, by a disregard of the statute. If that was all, or indeed any purpose of the statute, we should have found it differently expressed, or it would never have been passed. It is certainly a very ingenious device to carry the statute into effect, but one so clearly without the general scope and object of the statute, that it would seem far better that such a statute should fail of enforcement in some of its provisions, than that a penal statute should receive an extension, by mere construction, so entirely beyond the general scope of its terms, and the probable purpose and object of its enactment. The case of *The King* v. *The Justices of Middlesex,* 3 B. & Ad. 938, (23 Eng. Com. Law R. 223,) seems to us to have adopted even a narrower view of the import of the term party aggrieved or injured, than the one we here adopt. There was good reason to say, in that case, that an old innkeeper was more or less *directly* injured by licensing a new house. But the case goes upon the ground that the keepers of public houses were not the persons intended to be protected by the statute, but the public at large. So here, too, it is the public at large, the dealers in flour, and not the flour inspectors, that are intended to be protected by the statute.

In both cases, judgment affirmed.