CHARLES T. BATCHELDER v. CHARLES H. KINNEY.

*Party.   Cross-Examination.   Practice.   Witness.   Pleadings.
Judgment non obstante veredicto.   Motion in arrest.*

If a party is a witness, and upon cross-examination volunteers a narrative for his own
purposes, and outside of any purpose of the other party as indicated by his question,
and the narrative is not correct or true, it is legitimate for the other party to show
the incorrectness or falsity of such narrative as affecting the credit of the party who is
a witness in his own behalf.

The fact that the answer to the question left the party asking it in the same condition
on that subject as if he had not asked it, would not vary the rule, even though the
question, if put to a witness other than a party, might not be legitimate cross-examin-
ation. In this respect a party as a witness holds a position different from that of a wit-
ness who is not a party.

It has been held in this State to be in the discretion of the court to decline to submit a
general issue for a verdict, when the declaration sets forth no cause of action; and this
is the extent to which such discretion has been exercised.

The ground on which this practice has been adopted is that the declaration shows no
*cause of action*, and so judgment would be arrested on motion.

But when an issue has been formed upon the traverse of special pleas in bar, which are
defective, the matter stands on different grounds, and the issue should be tried.

If the verdict should be for the defendant upon issue joined upon the traverse of insuffi-
cient pleas in bar, *non constat;* the plaintiff would have judgment on motion, *non obstante
veredicto.*  The court on such motion would look into the whole record, and if the de-
claration had defects that were fatal on general demurrer, the verdict would be followed
by judgment for the defendant.

Many defects of substance cannot be reached by motion in arrest of judgment that would
be fatal on demurrer.

ACTION ON THE CASE, for slander.   The declaration charged
that the defendant, in the presence of others, accused the plaintiff
of perjury.   Plea, the general issue, and special pleas in bar, al-
leging, in justification, the truth of the words spoken.   There was
no replication to the pleas filed, but after they were read it was
said by counsel that the pleas were to be treated as traversed.
Trial by jury, March term, 1871, Washington county, PECK, J.,
presiding.   Verdict for the plaintiff.

In the early stages of the trial, the question was alluded to as
to the sufficiency of some of the pleas, which did not allege that
the plaintiff was guilty of perjury, the defendant claiming that, as
the pleas were not demurred to, if any one of them was proved
the defendant was entitled to a verdict; but the court told the

counsel that the court was not obliged to occupy the time in try-
ing issues which in one event manifestly would not be decisive of
the case, but lead to a re-trial; that as some of the pleas—those
that alleged that the plaintiff committed perjury—were good,
the court should hold that if the jury found the case made out on
the part of the plaintiff, in order to make out a justification under
the special pleas, the jury must find that the plaintiff committed
perjury on the trial of the case mentioned in the pleas, but that
whatever effect the facts alleged in the other pleas that did not
allege that the plaintiff committed perjury would have upon the
damages, the defendant would have the benefit of in assessing
damages, if the plaintiff should recover.

The plaintiff introduced evidence tending to prove the facts
necessary to make out the case on his part; and the defendant
introduced evidence tending to prove the issue on his part; and
the plaintiff then introduced evidence tending to disprove the jus-
tification set up in the defendant's pleas.

It appeared that T. P. Bartlett, the defendant, Kinney, and
Nathan Skinner were selectmen of Plainfield in the year 1869,
commencing at the annual March meeting that year; that there
was some controversy as to who should be appointed town agent
for the sale of intoxicating liquor that spring, a majority of the
selectmen being finally in favor of the appointment of one Page
as such agent; but the county commissioner refused to appoint
Page, and appointed the plaintiff. He received his appointment
from the county commissioner May 28, 1869; that in the after-
noon of the day he received his appointment as such agent, and
after he received it, he saw said Skinner and showed him his ap-
pointment, and Skinner wrote and signed an order on a firm in
Montpelier for a quantity of intoxicating liquor, intending it for
the plaintiff to sell as such agent, and handed the order to the
plaintiff to hand, for him ( Skinner,) to a teamster (naming him)
who drove a team from Plainfield to Montpelier, to have the team-
ster get the liquor the next day—(the teamster's practice was to
leave Plainfield at seven o'clock, forenoon)—Skinner saying, at
the time he drew the order, that in the mean time he would see
Kinney, the defendant, and that if he did not consent to it, he

would be at the village where the teamster was before he would leave and countermand the order ; that Skinner went to the defendant's house that evening to see him about the matter, but he was not at home ; that he saw his father and told him what he had done, and told him to tell his son, the defendant, that if he did not agree to it to come to his house early the next morning ; that the defendant did come the next morning, and did not consent to it, and Skinner went immediately to the village of Plainfield to see the teamster and countermand the order, but not arriving there till about twenty minutes after seven o'clock in morning, the teamster had gone with the order, and he brought back the liquor that day. It appeared that on the same day, and after Kinney knew the liquor had been sent for as above stated, in an interview between Skinner and the defendant on the subject, Skinner requesting the defendant to consent, and have the plaintiff go on and sell the liquor. The defendant told Skinner he would let him know in a week his conclusion or decision in the matter as to what he would do. The testimony on the part of the plaintiff tended to show that the same day the defendant told the plaintiff that there was considerable excitement there about it, and he thought he had better wait a week or ten days before he sold any, and it was disputed as to what the defendant said to the plaintiff ; the defendant's evidence tending to show he told him not to sell, and not to use his name.

The evidence on the part of the plaintiff tended to show that, before the end of the week the defendant had set for letting Skinner know what he would do, the defendant saw Skinner and told him he had concluded to let him ( Skinner ) go on alone, and manage the liquor business as he pleased ; that thereupon he ( Skinner ) went to the plaintiff and told him that the defendant had consented to have him proceed alone and manage the liquor business as he saw fit, and that he (Skinner) considered that he, the plaintiff, was authorized to go on and sell ; that the plaintiff told Skinner he thought he would wait till the time was out that the defendant requested him to delay ; that, about the 7th or 8th of June, and before the plaintiff began to sell, he ( Skinner ) went to Batchelder and fixed the price at which he was to sell the li-

quors, and told him he considered he was then acting as the majority of the board in furnishing the liquors and fixing the price at which to sell, and that the selectmen were unanimous as to the plaintiff's salary, and told the plaintiff he considered that he, the plaintiff, was fully authorized to commence selling. There was evidence tending to show that the plaintiff had previously stated to the selectmen that he, if he acted as agent, must have $50 as a salary or compensation, and that they had agreed to it. The testimony on the part of the defendant tended to show no contract was closed by a majority of the selectmen as to the amount of the plaintiff's compensation, and tended to show that the defendant did not authorize Skinner to go on and manage the liquor business, as the evidence on the part of the plaintiff tended to show; and tended to show that a majority of the selectmen had not consented to have the plaintiff sell the liquors. It appeared that immediately after the ten days expired, which the plaintiff's testimony tended to show the defendant requested the plaintiff to delay, the plaintiff commenced selling under his license as town agent.

In the plaintiff's opening evidence, the plaintiff (among other witnesses) was called, and testified, as a witness, as to the speaking of the words by the defendant as alleged in the counts in the declaration on which the case was tried.

On the cross-examination, the defendant's counsel inquired of the plaintiff as to whether he did not sign a note for the liquor which Skinner sent for, and he testified that after the trial before justice Martin in the suit against him, that trial being the 14th of June, 1869, either the 15th or 16th of June, 1869, the teamster said the parties of whom the liquor was had sent a note and wanted it signed and sent back; that said Skinner (one of the selectmen) signed it, and he signed it as surety for him, and Skinner got him to give it to the driver or teamster to carry back, which he did accordingly.

In the course of the defense, the defendant's counsel offered, as a witness, one of the firm of whom the liquor in question was purchased, and offered to prove by him that the note signed by Skinner as principal, and by the plaintiff as surety, was sent to them before the 14th of June, and as early as a week before the

14th of June.    It was not claimed by the defendant's counsel that the note was given when the liquor was purchased, nor earlier than the 7th of June aforesaid.

It was not claimed that this evidence was material for any other purpose than as tending to impeach the plaintiff, and as tending to show that the plaintiff knew that he was not testifying truthfully about it on the trial, June 14th, 1869, when the perjury of which the plaintiff was accused by the defendant is alleged in the pleas to have been committed.    On objection by the plaintiff's counsel, the court rejected the evidence, to which the defendant excepted.

The defendant offered, for the same purpose, to show that the plaintiff had said that the note was given a week before that trial, and on objection the court rejected it, to which the defendant excepted.    Afterwards, in the course of the defense, a witness, in testifying as to a conversation as to which the plaintiff had introduced testimony, but not as to the note, the defendant's witness was allowed to and did state that the plaintiff said in that conversation that the note was sent about a week before that trial of 14th of June, and the plaintiff as to that testified that he did not state so ; that in that conversation he stated it took place about a week ago, that is, about a week before the conversation, which conversation, as he testified, was about a week after the 15th or 16th of June, 1869.

The court, among other things not excepted to, charged that if the jury found the case proved for the plaintiff, that the defendant spoke the words in the sense alleged, that is intending by them to charge the plaintiff with having committed the crime of perjury, and all the other facts proved necessary to entitle the plaintiff to recover, that in order for the defendant to justify by showing the truth of the words, the jury must find that the plaintiff did commit the crime of perjury ; to which the defendant excepted.

The court also told the jury what amount of evidence was necessary to prove the plaintiff guilty of perjury ; told them, among other things, as the defense set up involved the commission of a crime, it required full proof to establish it, explaining to the jury what was intended by full proof in cases like this, and among other things told the jury that it was not necessary that the de-

fendant should make out the guilt of the plaintiff to that high degree of certainty that is necessary in criminal cases.

The defendant's counsel insisted that if the plaintiff claims the benefit of the rule that the defendant must sustain his justification by full proof, then upon this question the jury are the judges of both the law and the fact, and requested the court to so charge the jury. The court declined so to charge, and the defendant excepted to the refusal of the court so to charge.

*S. C. Shurtleff*, for the defendant.

The defendant was entitled to have the jury instructed as requested: a party connot plead and demur at the same time. 1 Chitty's Pleading, 532; *Lang* v. *Lewis*, 1 Randolph, 277; Bacon's Abridgment: Title Pleas, " N." Neither can a plaintiff object to the insufficiency of a defendant's plea on trial in action for slander and libel. 3 Starkie, 7. The evidence offered by the defendant, which the court rejected, was clearly admissible.

*Charles H. Heath*, for the plaintiff.

In order for the defendant to justify, he must prove the truth of the words spoken. He must prove that the words alleged in the plaintiff's declaration, and proved on trial, were spoken by the defendant in the sense set forth in the inuendoes: that is, that the plaintiff committed wilful and corrupt perjury. *Bradish* v. *Bliss*, 35 Vt., 326; Greenleaf's Evidence, 474, and cases there cited.

The opinion of the court was delivered by

BARRETT, J. The question put to the plaintiff, on cross examination, was in relation to the transaction constituting the purchase of the liquor that went into his hands to be *officially* sold by him, and which, according to his testimony before the justice, set forth in the 1st and 5th special pleas, was furnished to him by the selectmen. The fact of his having signed a note to the vendor for the price, might, unexplained, indicate that it was not so furnished, in the true meaning of the statute on that subject. The question, therefore, was in relation to a legitimate subject of en-

quiry, as bearing on the question whether the liquor was furnished by the selectmen. As he was a party, and on the stand as a witness in his own behalf, his answer was subject to being contradicted, both for the purpose of invalidating it as evidence on the main issue, and of discrediting him as a witness in the cause in his own behalf on the direct examination.

It is to be noticed that the plaintiff did not limit himself to answering to the very point of the question,—which probably would have answered all the defendant's purpose in putting it—but he proceeded to volunteer a narrative for purposes of his own, and outside of any purpose of the defendant as indicated by his question. If, in so doing, the plaintiff testified incorrectly or falsely, it is legitimate for the other party to show the incorrectness or falseness, as affecting his credit as a witness in his own behalf on the main issue. The fact that to this question of the defendant, the plaintiff gave an answer that left the defendant much in the same condition on that subject as if he had not asked it, would not seem to constitute any reason why the plaintiff should have immunity from the effect upon his credit of his false-swearing as to a legitimate subject of enquiry by the other party, even though the question, if put to a witness not a party, might not be legitimate cross-examination. In this respect, a party as a witness holds a position differing in many respects from that of a witness who is not a party; and this fact distinguishes the present case from that cited in argument, of *Fairchild et al.* v. *Bascom*, 35 Vt., 405. In the opinion of this court, the rejected testimony of the vendor of the liquors ought to have been received.

II. The plaintiff, instead of demurring to the pleas held by the county court to be insufficient, traversed those pleas and tendered issue to the country: which issue was joined by the defendant. The court declined the request of the defendant to put those issues to the jury. Though it has been said to be a departure from the English rule and practice, it has been held in this State to be in the discretion of the court to decline to submit a general issue for a verdict, where the declaration sets forth no cause of action. This is the extent to which such discretion has been exercised or sanctioned in this State, and this, even, seems to be

counter to the decision in *French* v. *Thompson*, 6 Vt., 54. The more modern idea on that subject is developed in *Baxter* v. *Winooski Turnpike Co.*, 22 Vt., 114. And yet in *Dyer* v. *Tilton*, 23 Vt., 313, it is said, "But as the plaintiff did prove his declaration, and the defendant thought proper to plead the general issue instead of demurring, we ought not, we think, to deprive the plaintiff of the benefit of his verdict: which was correct, we think, upon the issue joined." But as the declaration was insufficient to found any judgment upon, judgment was arrested on motion. See *Ammidon* v. *Aiken*, 28 Vt., 440. The ground on which that practice has been adopted is, that the declaration showed *no cause of action*—and so judgment would be arrested on motion: in which case it was hardly worth while to go through with a fruitless trial. But when an issue has been formed upon the traverse of special pleas in bar, the matter stands on other and altogether different reasons. A defective plea may be sufficient for a defective declaration; and in pleading such plea, the defendant may design—in case the sufficiency of his plea should be questioned—to protect himself by questioning the sufficiency of the declaration, as he might do if his plea had been demurred to. If the court refuse to submit to trial the issue found on the traverse to the plea, the defendant is deprived of his right to answer an objection to his plea by asserting a valid objection to the sufficiency of the declaration. If the plaintiff sees fit to take his chances by traversing and tendering issue instead of demurring to the plea, it is equally the privilege and the right of the defendant to take his chances under a verdict found on that issue. If the verdict should be for the defendant, *non constat* the plaintiff would have judgment on motion, *non obstante veredicto*. The court, on such motion, would look into the whole record; and if the declaration had defects that would be reached by general demurrer, the verdict would be followed by judgment for the defendant. The doctrine and rules on this subject are well set forth in Gould's Pl., ch. 10: §29, to §49, as also in Chit. Pl., ch. 9.

It would not accord to the defendant all the right he would have under a demurrer to his pleas, if denied a trial on the issue made on the traverse of them, to say that for defect of the declar-

ation he might move in arrest of judgment; for many defects of substance would not be reached by that motion, that would be fatal on demurrer: while on motion by the plaintiff for judgment, notwithstanding verdict, the defendant would have all the advantage he would have been entitled to if plaintiff had demurred to his pleas.

Judgment reversed, and cause remanded.