## Town of Stockbridge

### v.

## State Highway Board

[216 A.2d 44]

October Term, 1965

Present: **Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed December 14, 1965

*James W. Wright* for the town.

*Keith E. King* for the State Highway Board.

**Keyser, J.** This is a highway condemnation case appealed to the Windsor County Court under the provisions of Chapter 5, Title 19, V.S.A. Two parcels were acquired with buildings thereon designated as 7A and 7B. Upon trial a jury rendered separate verdicts for each parcel, $4,650.00 for 7A and $850.00 for 7B, a total of $5,500.00.

This case took an unusual course in the trial court terminating in appeal by the plaintiff. On evidence developed during trial the state moved to dismiss as to parcel 7A on the theory that the town was not entitled to compensation for the taking since it was used by the town in its governmental, as opposed to its proprietary, capacity. The state also moved to strike the plaintiff's evaluation testimony of this parcel as lacking in competency. These two motions were denied.

At the conclusion of the evidence counsel requested that the court entertain motions. The court asked counsel to defer argument on these motions until after its charge to the jury. The question of just compensation for the most reasonable use of parcel 7A was submitted to the jury for its consideration on the issue of damage, to which the state excepted.

Following the charge, and while the jury was deliberating, the state moved to dismiss the action, and for a directed verdict, as it related to parcel 7A, on the grounds similar to its previous motions. The court treated these motions as filed before the charge but they were not placed on the record, argued, or disposed of until after submission of the case to the jury. In effect the trial court placed the cart before the horse. The court denied each motion. By adopting this procedure the court was deprived of the benefit of the timely views of the state in support of its motions. We do not countenance this practice.

Following the verdicts the plaintiff moved for judgment. No ruling was made thereon. The state then moved to set aside the verdict, and in the alternative that plaintiff be ordered to remit $2,050.00 of the verdict of $4,650.00 for parcel 7A. In support of its motion the state urged that the verdict of $4,650.00 was excessive and not supported by competent evidence. Further, that the use made of parcel 7A was of a governmental nature and not compensable. Following a hearing thereon the court denied this motion.

A judgment order followed, reciting in part, "That the plaintiff recover the amount of $3,400.00 in said cause, said amount being the amount initially awarded by the State Highway Board." By the judgment order the court determined under the provisions of 19 V.S.A.

§ 230, as amended, that costs of $18.06 should be taxed against the plaintiff and be deducted from the unpaid balance of 5% of the award. It is because of this judgment entered by the court that motivated plaintiff's appeal.

The highway board's lump sum award was $3,400.00 for the property taken and incidental damage. The only witness for the defendant highway board at the trial testified that the fair market value of parcel 7 B was $750.00. Assuming this was the amount of the board's award for that parcel, it is safe and reasonable to conclude that the board awarded $2650.00 for parcel 7A. This is the parcel for which defendant now claims, and did at the trial, that the plaintiff is not entitled to any compensation because it was held in its governmental capacity.

The gravamen of this case lies in this contention of defendant and our attention is first directed to this question.

19 V.S.A. § 230 provides that the board "shall by its order fix the compensation to be paid to each person from whom land or rights are taken."

19 V.S.A. § 231 grants the right to appeal to "a person interested in such lands or a municipal corporation affected by relocation who is dissatified with the decision of the board as to the amount of damages awarded for the same."

The evidence in this case is that the plaintiff town owned parcel 7A. It was, therefore, the person referred to in sections 230 and 231, supra, since it was the one who is able to validly convey title to these "lands and rights" taken. *American Oil Co.* v. *State Highway Board,* 122 Vt. 496, 177 A. 2d 358; *City of Winooski* v. *State Highway Board,* 124 Vt. 496, 207 A. 2d 255.

Thus, we are confronted with the facts shown by the evidence in deciding whether the ownership of parcel 7A by the town was in its governmental or proprietary capacity. The distinction is quite clear and well settled but in the process of separation each case must of necessity depend largely, if not entirely, on its own factual situation. The law must be brought into the framework of the record.

Parcel 7A was acquired by gift from a Mrs. Harris Gay at the time of the big flood of 1927. It was the only building left standing of the mills located in Gaysville which were the source of income of the town. Mrs. Gay felt it would be a historical land mark and the

selectmen accepted it in memory of Gaysville, a village within the plaintiff town.

The building is small containing about 500 square feet with one large room and two small ones. The town used it to store records, documents and history books pertaining to the town. Even private persons could keep records there. These were stored in three safes, in cupboards and on bare shelves. The selectmen met there infrequently and any group of townsmen desiring a meeting place could also make use of the building. "Generally speaking, it was not open to the public at large."

The line between municipal operations that are proprietary and those that are governmental is not clearly defined. The basis of the distinction is difficult to state, and there is no established rule for the determination of what belongs to the one or the other class. It originated with the courts. Generally it is applied to escape difficulties, in order that injustice may not result from the technical defenses based upon the governmental character of such corporation. Justice Butler in *Trenton* v. *New Jersey*, 262 U. S. 182, 67 L. ed. 937, 43 S. Ct. 534, 29 A. L. R. 1471.

A municipal corporation has a dual character, and, as such, performs a dual function. In its first aspect it is governmental, public or legislative. In its second it is corporate, private, ministerial or proprietary. . 1 Dillon, Municipal Corporations, 5th Ed., p. 181; McQuillan, Municipal Corporations, 2d Ed., p. 758; *City of Seattle* v. *Stirrat*, 55 Wash. 560, 104 P. 834, 24 L. R. A., N. S. 1275; 63 C. J.S. Municipal Corporations, § 757 (b) ; 38 Am. Jur., Municipal Corporations, § 572.

In *Seattle* v. *Stirrat*, supra, the court at 1277 (L.R.A., N.S.) quoted from Dill. Mun. Corp. 4th Ed., section 66 as follows: ". . . In its governmental or public character the corporation is made, by the state, one of its instruments, or the depositary of certain limited and prescribed political powers, to be exercised for the public good on behalf of the state rather than for itself. In this respect it is assimilated in its nature and functions to a county corporation, which, as we have seen is purely part of the governmental machinery of the sovereignty which creates it. Over all its civil, political, or governmental powers the authority of the legislature in the nature of things supreme and without limitation, unless the limitation is found in the Constitution of the particular state. But in its proprietary or private character, the theory is that the powers are supposed not to be conferred, primarily

or chiefly, from consideration connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded *quoad hoc* as a private corporation, or at least not public in the sense that the power of the legislature over it, or the rights represented by it, is omnipotent."

"As regards property held by a municipality in its governmental capacity, the legislature may in general exercise final authority over its use or disposition . . . " *Town of Winchester* v. *Cox,* 129 Conn. 106, 26 A. 2d 592, 595.

■ In 63 C.J.S., Municipal Corporation, § 757 (b, 2) it is stated "that the underlying test is whether the act performed is public in character and performed as agent of the state in furtherance of general law for the interest of the public at large, or whether it is performed primarily for the benefit of those within the corporate limits of the municipality, the act of the officer or employee being regarded as governmental in the one case, and as corporate or proprietary in the other." Notes 10-12.

To the same effect, *Lemieux* v. *City of St. Albans,* 112 Vt. 512, 514, 515, 28 A. 2d 373; *Marshall* v. *Brattleboro,* 121 Vt. 417, 421-425, 160 A. 2d 762; *Ramirez* v. *Ogden City,* 3 Utah 2d 102, 279 P. 2d 463, 47 A. L. R. 2d 539, 543; *War Memorial Hospital of Dist. No. 1, Park County* v. *Board of County Comm'rs of Park County,* 73 Wyo. 371, 279 P. 2d 472, 475; *Hagerman* v. *City of Seattle,* 189 Wash. 694, 66 P. 2d 1152, 110 A. L. R. 1110; 37 Am. Jur., Municipal Corporations, § 114.

Again in 18 Am. Jur., Eminent Domain, § 172 it is stated that "real and personal property used for various other municipal functions enuring more to the benefit of the inhabitants of the city or town than to the safety and convenience of the public at large" falls into a class defined as a proprietary or private use of the municipality.

The land and building was not in its intrinsic characteristics a project for the public good of all the public which it must be if classed as a governmental use. It had no relation to public health or police power. There was no evidence to support a finding that the property was held for the safety and convenience of the public at large; or that the town was acting in the role of agent for the state in its ownership

of the property; or that the legislature could exercise final authority over its use or disposition.

Further, the evidence does not show or establish that the public at large derived any benefit from plaintiff's ownership of the property. If there was any, it was so slight and incidental to be of no consequence. There is no evidence that the building was used as the town clerk's office. Also, no right of access to the building by the public at large is shown by the evidence or that it was open to all members of such public on an equal basis. The building was not a "public building" within the concept of that term.

The act of owning the property in question, unlike the duties of the departments of health, charities, fire, police and schools, was more immediately performed in the interest of the corporation which is burdened with the obligation of preserving its own public records in suitable condition. In the performance of a corporate function, the town stands upon the same footing as a private corporation. In so doing it then acts for itself, and not for the public at large.

The highway board did not consider the ownership of parcel A by the town in its governmental capacity until the case reached the trial stage. This is borne out by the fact that board placed a valuation on the property and included it as a part of the overall award to the plaintiff.

By its action the highway board elected to treat the plaintiff town as the owner of both parcels 7A and 7B in its proprietary capacity. It thereby adopted the view and took the position that the applicable statutes did allow compensation to the plaintiff for parcel 7A as well as parcel 7B.

Also, if the trial court had granted defendant's motion to dismiss parcel 7A from the case, an element or item of damage included by the board in its award would have been removed from the consideration of the jury and thus lost to the plaintiff.

On the record presented in this case, we hold that parcel 7A was held and owned by the plaintiff town in its corporate, or private, capacity and is entitled to damages for its loss as provided by 19 V. S. A. § 230. The rulings of the court on defendant's motions were without error.

The case of *Winooski* v. *State Highway Board*, supra, is cited by the state in support of its claim here as to parcel 7A. The principal

of law there enunciated is not in any aspect conflicting with our holding in this case. That case came to us on a certified question. The plaintiff city sought our determination on the question of whether it was entitled to include as one of its items of damage a section of its public highways located on the land condemned. No buildings were involved. That case is not determinative of the issue in the case at bar.

This brings us to the question raised by plaintiff-appellant that the court erred in reducing the jury verdict of $5,500.00 for both parcels to $3,400.00, the total amount of the board's award. This procedure by the court on its own motion without notice to, or approval by, the plaintiff was irregular and without legal basis or justification. See *Scampini* v. *Rizzi,* 106 Vt. 281, 172 Atl. 619.

After the court had denied defendant's motions for a new trial and a remittitur, it should have granted plaintiff's motion for judgment on the verdict. Except where the damages are liquidated a judgment for a smaller or larger amount than the verdict made without the consent of the party adversely affected, is error. *Pettingill* v. *Kelton,* 124 Vt. 472, 475, 207 A. 2d 245.

Furthermore, on appeal to county court the trial was *de novo* on the issue of damages. *Fiske v. State Highway Board,* 125 Vt. 17, 19, 209 A.2d 482. There was no evidence of the amount of the board's award of $3,400.00 in the case and it was *dehors* the record. Moreover, such evidence would have been wholly incompetent on the matter of damages. The court on the facts shown was without authority to render the particular judgment it did under any circumstances. *Santerre* v. *Sylvester,* 108 Vt. 435, 189 Atl. 159; 49 C.J.S.Judgments, §55; Black on Judgments, 2d Ed., Vol 1, Sec. 142. By the judgment entered, the court in effect nullified the jury trial already granted on the authority in such cases by 19 V.S.A. 232. Accordingly the judgment must be reversed.

*Judgment reversed and cause remanded for the entry of judgment on the verdict and in accordance with the provisions of the applicable statutes.*

Smith, J. sat but did not participate in the opinion.