## Donald Hillerby v. Town of Colchester

[706 A.2d 446]

No. 96-243

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 26, 1997

*Richard R. Goldsborough* and *Corinne P. Wadhams* of *Jarvis & Kaplan*, Burlington, for Plaintiff-Appellee.

*Richard C. Whittlesey* of *Roesler, Whittlesey, Meekins & Amidon*, Burlington, and *Frederick S. Lane III*, Of Counsel, Winooski, for Defendant-Appellant.

■ **Allen, C.J.** The following question has been certified for review by this Court pursuant to V.R.A.P. 5(b): "Whether the traditional governmental/proprietary distinctions in municipal tort immunity law should be replaced with the so-called private-analog test as now employed in state tort claims under 12 V.S.A. § 5601?" Because of the Legislature's approval of the governmental/proprietary distinction and the complex policy issues involved, we hold that the abrogation and replacement of the distinction are matters for the Legislature, not the courts.

Plaintiff was riding his bicycle across a grassy area in the Town of Colchester when a manhole cover, over which he was crossing, collapsed. He sued the Town and others for injuries allegedly sustained during the occurrence. The Town filed a motion for summary judgment claiming sovereign immunity. In deciding the motion, the Chittenden Superior Court abandoned the established governmental/proprietary distinction in favor of the private-analog test, a test used to determine the liability of the State in tort actions. See 12 V.S.A. § 5601(a). It found that plaintiff satisfied the requirements of the test and denied the Town's motion. The court then granted a motion by the Town requesting permission to appeal the court's interlocutory order to this Court.

■ Municipal immunity is a common-law doctrine dating back in Vermont to the mid 1800s. See *Baxter v. Winooski Turnpike Co.*, 22 Vt. 114, 123 (1849) (law does not provide remedy where individual sustains injury due to negligence of town). The immunity of a municipality, however, is not unlimited. Traditionally, courts have held municipalities liable only where the negligent act arises out of a duty that is proprietary in nature as opposed to governmental. The rationale for this is that municipalities perform governmental responsibilities for the general public as instrumentalities of the state; they conduct proprietary activities only for the benefit of the municipality and its residents. See *Marshall v. Town of Brattleboro*, 121 Vt. 417, 422, 160 A.2d 762, 765 (1960). This Court has applied the governmental/proprietary distinction for decades. See, e.g., *Roman Catholic Diocese of Vt., Inc. v. City of Winooski Hous. Auth.*, 137 Vt. 517, 520, 408 A.2d 649, 651 (1979) (municipal housing project is proprietary activity not entitled to immunity); *Lemieux v. City of St. Albans*, 112 Vt. 512, 516, 28 A.2d 373, 375 (1942) (construction of public playground is governmental function, thus precluding municipal liability). Yet it has also criticized the doctrine and acknowledged its abandonment by other jurisdictions. See, e.g., *Hudson v. Town of E. Mont-*

*pelier,* 161 Vt. 168, 177-78 n.3, 638 A.2d 561, 567 n.3 (1993) (Vermont is in minority of states that follows distinction widely denounced as unworkable, unsound, and arbitrary); *Marshall,* 121 Vt. at 423-24, 160 A.2d at 766-67 (distinction produces anomalous results in factually similar cases). But see *Kelly v. Town of Brattleboro,* 161 Vt. 566, 567, 641 A.2d 345, 346 (1993) (mem.) (applying distinction in same year that *Hudson* was decided).

■ In the present case, the Town argues that this Court should not abandon the governmental/proprietary distinction because the Legislature has explicitly and implicitly endorsed the doctrine. Plaintiff, however, urges this Court not to "shirk its duty and retreat into the safe haven of deference to the legislature." (Quoting *Hay v. Medical Ctr. Hosp. of Vt.,* 145 Vt. 533, 543-44, 496 A.2d 939, 945 (1985)). He claims that the argument that "the issue is more appropriate for legislative resolution is wholly unpersuasive; such an argument ignores [this Court's] responsibility to face a difficult legal question and accept judicial responsibility for a needed change in the common law." (Quoting *id.* at 543, 496 A.2d at 945.) Plaintiff points out that municipal immunity and the governmental/proprietary distinction are common-law doctrines that a variety of courts have abrogated without legislative action. Yet this Court's ability to act does not turn on whether the doctrines in question are judicially created, but on whether the Legislature has expressed approval of these doctrines since their formulation. Such approval precludes judicial action. See *Town of Milton v. Brault,* 132 Vt. 377, 380, 320 A.2d 630, 632 (1974) (refusing to abolish municipal immunity because of Legislature's endorsement; distinguishing abandonment of doctrine by other state courts following legislative silence).

■ The Legislature first recognized sovereign immunity in 1960 when it adopted 29 V.S.A. § 1403, which waived immunity to the extent of coverage whenever the state, a county, or a municipality purchased liability insurance. See 1959, No. 328 (Adj. Sess.), § 14 (when governmental entity purchases liability insurance "it waives its sovereign immunity from liability to the extent of the coverage of the policy and consents to be sued"). The Legislature amended the statute in 1982 and 1989, eliminating the state from its coverage with the second amendment. See 1981, No. 213 (Adj. Sess.), § 1; 1989, No. 114, § 7. The enactment and amendments of § 1403 are an explicit acknowledgment of municipal immunity and an implicit recognition of the governmental/proprietary distinction. They also demonstrate the

Legislature's intent to treat state and local governments differently, as well as its desire to ameliorate the possible harsh consequences of governmental immunity. See *Marshall*, 121 Vt. at 424, 160 A.2d at 767; cf. Ark. Code Ann. § 21-9-303 (Michie 1996) (softening impact of municipal immunity by including insurance-waiver provision). Given the Legislature's acknowledgment and modification of municipal immunity and the governmental/proprietary distinction, we cannot drastically alter the manner by which courts decide issues of local liability. See *Roman Catholic Diocese*, 137 Vt. at 519-20, 408 A.2d at 650-51 (because Legislature recognizes municipal immunity in § 1403, Court is bound to accept its continuance).

■ ■  Under the common law, lawsuits against the state are barred unless the state consents to be sued by waiving its sovereign immunity. *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 484-85, 622 A.2d 495, 497 (1993). In 1961, the Legislature enacted the Vermont Tort Claims Act (VTCA), waiving the state's immunity in specified tort actions. 1961, No. 265, §§ 1-5 (codified as amended at 12 V.S.A. §§ 5601-5606). Although some states have passed legislation that limits both state and municipal immunity, see, e.g., Or. Rev. Stat. §§ 30.260 - 30.300 (1995), the Vermont Legislature chose to address only the liability of the state in its legislation. See, e.g., 12 V.S.A. § 5601(a) ("The state of Vermont shall be liable for . . . ."). Had the Legislature intended to alter the governmental/proprietary distinction, it could have included municipalities in the VTCA or enacted a separate statute relating only to municipalities. We see its failure to do so as an endorsement of the distinction.

■  In 1986, the Legislature again indicated approval of the distinction with its enactment of 24 V.S.A. §§ 4941-4946, a statute relating to intermunicipal insurance agreements. See 1985, No. 237 (Adj. Sess.), § 1. Section 4946 states that "the implementation of this subchapter by any municipality . . . shall constitute *essential governmental functions*." (Emphasis added.) It also states that participation by a municipality in an agreement shall not "constitute a waiver of *sovereign immunity* under 29 V.S.A. § 1403." 24 V.S.A. § 4946 (emphasis added). Both references demonstrate the Legislature's recognition and acceptance of the governmental/proprietary distinction.

■  The Town also argues that complicated public policy issues preclude the Court from abandoning the governmental/proprietary distinction and replacing it with the private-analog test. This Court

adopted the distinction specifically to address the dual character of municipalities. See *Town of Stockbridge v. State Highway Bd.*, 125 Vt. 366, 369-70, 216 A.2d 44, 46-47 (1965) (municipality is liable for acts exercised for private advantage, not liable for acts discharged on behalf of state). The Legislature, on the other hand, adopted the private-analog test to determine only issues of state liability. According to the statute, the state is "liable for injury . . . caused by the negligent or wrongful act or omission of an employee of the state while acting within the scope of employment, under the same circumstances, in the same manner and to the same extent as a private person would be liable to the claimant." 12 V.S.A. § 5601(a). Different policy considerations, especially financial concerns, must be examined to decide the scope of state as compared to municipal liability. In adopting the private-analog test, the Legislature addressed and responded to issues of public policy only in the context of state sovereign immunity. Simply because the private-analog test appears to be an adequate solution regarding state liability does not mean that similar results will occur where municipalities are involved.

It is also important to note that the Legislature tailored the private-analog test with exceptions and limitations that this Court is in no position to define and compel in the area of municipal immunity. See *Denicore v. City of Burlington*, 116 Vt. 138, 144, 70 A.2d 582, 586 (1950) ("'Where the legislature has declared no limitations the courts are without power to write them into the law. . . . The legislature alone can prescribe limitations.'") (quoting *State ex rel. Saylor v. Walt*, 278 N.W. 12, 15 (S.D. 1938)). Not only has the Legislature limited the amount of damages that an individual or group of plaintiffs may receive from the state, see 12 V.S.A. § 5601(b) (maximum liability of state is $250,000 for individual plaintiff and $1,000,000 in the aggregate regarding each occurrence), but it has also excepted from liability claims arising out of the execution of a statute or regulation, those involving the assessment or collection of taxes, and a variety of others. See *id.* § 5601(e)(1)-(8). In addition, the Legislature has addressed the areas of settlement, payment, and indemnification of state employees. See *id.* §§ 5603, 5604, 5606. By adopting the private-analog test for municipalities, this Court would expose towns to increased liability without the protections that the Legislature carefully adopted for the state. Although stated in relation to the abolishment of state sovereign immunity, the words of Maryland's highest court are equally applicable to the abrogation of municipal immunity:

> [I]t is desirable and in the public interest that any change in the doctrine of sovereign immunity should come from the legislative branch of the State Government rather than from the judicial branch inasmuch as there are fiscal considerations, administrative difficulties and other problems in balancing the rights of the State and its agencies with new possible rights of the individual citizens, which can far better be considered and resolved by the legislative branch than by the judiciary of the State.

*Jekofsky v. State Roads Comm'n*, 287 A.2d 40, 42 (Md. 1972).

Our refusal to abolish the governmental/proprietary distinction should not be read as an endorsement of that distinction. We point out, as we did in *Hudson*, 161 Vt. at 177-78 n.3, 638 A.2d at 567 n.3, that many courts, legislatures, and commentators have strongly criticized this method of determining municipal liability. Yet we believe that our role in addressing this issue, at this time, is not to reform the rules of municipal immunity, but to give the Legislature the initial opportunity to fashion a more reasonable and workable doctrine. Its fact-finding and problem-solving process is better suited for the task in this area of the law.

*The certified question is answered as follows: the abrogation and replacement of the governmental/proprietary distinction is a matter for the Legislature.*

**Dooley, J.,** dissenting. In two of three of its general themes, I concur in Justice Johnson's dissent. The governmental/proprietary distinction is neither appropriate nor workable and should be abandoned. This Court created the distinction and should now eliminate it, making it irrelevant to the negligence liability of a municipality whether a governmental or proprietary activity was involved. The Legislature has never endorsed this distinction, and we should not leave it to that body to eliminate it. We cannot, as the majority holds, refuse to endorse the distinction but leave it in place.

I do not concur, however, in the broader view that we should also eliminate general municipal immunity, leaving only the very limited protections proposed by Justice Johnson. Nor do I believe that our goal should be to expand municipal liability. Many of the reasons for municipal immunity have become archaic; many did not support the policy even when it was adopted. Our task should be to tailor our law on municipal immunity to the modern policy reasons for recognizing such immunity.

Justice Johnson has explained that one of the important goals of any modern municipal immunity policy is to preserve separation of powers and protect certain executive-branch decision-making from second-guessing in the judiciary. I agree that this is an important goal, but it is not the only goal.

Throughout this century, government at all levels has taken on new responsibilities to protect the health and safety of its citizens. Through inspection and regulation, government seeks to prevent activities that would impair the public health or degrade the environment. Through its law enforcement and corrections personnel, it seeks to prevent crime and incapacitate violent lawbreakers. Through its fire-fighters, it seeks to prevent property damage and loss of life from fires. Through proper design, construction and operation, it makes modern transportation systems safe and efficient. If the promise of these governmental programs were fully realized, the vast majority of personal injuries would be prevented and there would be few adverse public health consequences from pollution and environmental degradation. Conversely, it is possible to assign some of the blame for almost any serious personal injury or environmentally caused sickness to the failure of a governmental actor to intervene effectively and in a timely fashion.

There are other reasons that government becomes a tort-litigation target. Many of the standards under which government employees act are, and must be, embodied in statutes and regulations that become duties, the breach of which gives rise to tort liability. Judgments against governmental units are usually collectible.

I do not believe that our tort-liability rules should provide that whenever the appropriate response of a government agent could have prevented a personal injury or adverse health consequence, the responsible governmental unit is liable along with any primary tortfeasor. Not only were the governmental programs not designed to assume a personal duty to every potential beneficiary, particularly in an era of scarce public resources where need and demand are inevitably greater than the capacity to meet them, but the liability consequences of such a policy would be massive, threatening the ability of government to respond at all to health and safety threats. It would be wiser to spend any additional resources on making prevention programs work better for the benefit of all citizens rather than responding to tort claims.

Even in Vermont where most municipalities are small and are governed by volunteers, municipalities have responsibility in essential

areas of public health and safety. For example, municipalities are generally responsible for law enforcement, fire protection, and housing and building codes. Thus, the abolition of municipal immunity would expose Vermont cities and towns to a great and unmeetable liability exposure.

One possible response to the issues before us is to point out the difficulties and deficiencies in possible approaches and leave it to the Legislature to act. Both the majority decision and the dissent of Justice Johnson propose this response. The majority resolution is not likely to induce any response since the Legislature can continue with the status quo no matter how irrational the status quo may be. Cities and towns, supported by insurance carriers, are likely to respond to Justice Johnson's position by declaring a liability crisis, requiring immediate and emergency action by the Legislature to fix the problem. I do not think that we deal appropriately with a coequal branch of government by either action. I think our proper response is to create a new, workable municipal immunity rule. We can do so prospectively, as Justice Johnson suggests. If the Legislature is able to improve on any immunity rule we adopt, we should welcome its action.

The superior court proposed that we adopt, as an alternative to our current rule, the private-analog test, which is used to determine whether the state is immune from suit. See, e.g., *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 486, 622 A.2d 495, 498 (1993). In addition, there are two main alternatives in use by courts which have abolished blanket municipal immunity and rejected the governmental/proprietary-responsibility rule: (1) immunity covering breaches of public duties; and (2) immunity for discretionary acts. I would adopt both of these alternatives. The public-duty rule is similar in effect and purpose to the private-analog test; its adoption would make it unnecessary to consider the private-analog test.

Under the public-duty rule, tort liability does not attach where the duty owed by the municipality runs to the public in general, rather than to any particular member of the public, in the absence of a special relationship between the municipality and the tort plaintiff. We have an interesting recent history with this rule. In *Hudson v. Town of East Montpelier*, 161 Vt. 168, 176-77, 638 A.2d 561, 566-67 (1993), we refused to adopt the doctrine as a defense to negligence cases against *individual* municipal employees. In doing so, we were quite critical of the rule: "it is confusing and leads to inequitable, unpredictable, and irreconcilable results." *Id.* at 176, 638 A.2d at 566.

Nevertheless, one year later in *Corbin v. Buchanan*, 163 Vt. 141, 143, 657 A.2d 170, 172 (1994), we applied the doctrine to the question of whether a municipality could be liable for failure to conduct regular fire inspections of apartment buildings. In that case, a young boy died in a fire in a building that had been inspected by a town inspector in response to a complaint about wiring, plumbing and sewer problems. The inspector noticed that the building lacked smoke detectors, but did not pursue that issue because it was not part of the complaint. Plaintiff alleged that the fire code adopted by the town required regular periodic inspection and that such inspection would have turned up the absence of smoke detectors as a violation of the ordinance.

Without referring specifically to the public-duty doctrine, we held that the town could not be liable for failure to enforce the fire code because the duty was owed to "the public as a whole." *Id.* We cited to public-duty-rule cases from other jurisdictions and quoted extensively from one. We recognized the apparent inconsistency of the holding with *Hudson* and attempted to distinguish that case on the ground that *Hudson* dealt with official immunity while *Corbin* dealt with whether a duty of care existed.

Justice Johnson would treat *Corbin* as sui generis, standing simply for the proposition that "government entities are not liable for their failure to enforce regulations adopted to protect the public at large." 167 Vt. at 291-92, 706 A.2d at 458. While this statement covers part of the public-duty rule, it ignores other factual situations where the rationale will apply. I do not believe we can, or should, limit the application of the rationale.

I am reminded of the Massachusetts experience. In *Dinsky v. Town of Framingham*, 438 N.E.2d 51, 56 (Mass. 1982), the Massachusetts Supreme Judicial Court similarly held that a town was not liable for damages arising out of its failure to inspect pursuant to a building code because the building code created a duty only to the public at large. Over time, *Dinsky* was applied in other circumstances, and the court acknowledged in 1993 that it had adopted the "so-called public duty rule." *Jean W. v. Commonwealth*, 610 N.E.2d 305, 308 (Mass. 1993). The court then reversed course, holding that the public-duty rule could not coexist with the comprehensive Massachusetts Tort Claims Act, which governed the liability of all units of government. See *id.* at 312. In response, the Legislature amended the Act to specify the liability outcome in all the common circumstances covered by the public-duty rule. See Mass. Gen. Laws Ann. ch. 258, § 10 (West

Supp. 1997). The law specifically provides immunity against claims based on issuance of or refusal to issue a license or permit, failure to inspect or negligent inspection, acts or omissions connected with fighting a fire, failure to provide adequate police protection or to arrest or detain suspects or enforce any law, and the release of persons in public custody. See generally Glannon, *Liability for "Public Duties" Under the Tort Claims Act: The Legislature Reconsiders the Public Duty Rule*, 79 Mass. L. Rev. 17 (1994).

Our *Hudson* decision criticized the public-duty rule for three reasons: (1) it resurrects governmental immunities; (2) "in recent years [it] has been rejected or abolished by most courts considering it"; and (3) "it is confusing and leads to inequitable, unpredictable, and irreconcilable results." 161 Vt. at 176, 638 A.2d at 566. I agree generally with these criticisms if they are applied to the liability of individual government employees and we retain the governmental/ proprietary distinction to determine municipal liability. I think they are overstated when applied to municipal liability and should not deter us from adopting the public-duty rule as an alternative to our current policy.

If our goal is to eliminate municipal immunity, the public-duty rule is inconsistent with that goal. See, e.g., Note, *Massachusetts General Laws Chapter 258, § 10: Slouching Toward Sovereign Immunity*, 29 New Eng. L. Rev. 1079, 1080 (1995). But, I believe that our goal is different: to define where governmental assistance, designed to protect the health and safety of citizens generally, should give rise to a duty to protect individual citizens such that negligent breach of the duty should give rise to tort liability. The public-duty rule addresses that goal directly. Thus, the fact that it resurrects governmental immunities is its strength, not its weakness:

If there has been any trend to reject or abolish the public-duty rule, it has been a "slight trend." Comment, *Connecticut Tort Reform Act and Municipalities' and Building Officials' Liability*, 20 Conn. L. Rev. 203, 216 (1987); see generally Annotation, *Modern Status of Rule Excusing Governmental Unit from Tort Liability on Theory that Only General, Not Particular, Duty Was Owed Under Circumstances*, 38 A.L.R.4th 1194 (1985 & Supp. 1997) (indicating that only a handful of states have rejected public-duty rule). In New England, only New Hampshire has abolished the rule. See *Doucette v. Town of Bristol*, 635 A.2d 1387, 1390 (N.H. 1993). The Massachusetts court abolished the rule, but, as discussed above, the legislature effectively reinstated it.

The most telling criticism of the public-duty rule is that it can be difficult to apply. I do not believe this is because the rule is inherently defective, but because the choices are often complex and hard. Any rule that attempts to determine instances where it is appropriate to impose municipal liability for governmental acts is necessarily complicated. The alternatives, however, are less acceptable. They are that we impose broad and unwarranted liability on municipalities because they have assumed responsibilities to protect the health and safety of their citizens, or that we, or the Legislature, adopt broad immunities that unnecessarily deny citizens a remedy. If the Legislature finds the applications of the rule inappropriate, it can, as in Massachusetts, legislate those results directly.

I would also immunize a municipality from acts of employees that are discretionary, rather than ministerial. Justice Johnson's dissent states the rationale for this form of immunity. Although they differ on the scope of discretionary acts that are covered by immunity, all New England states extend municipal immunity to discretionary acts. See Conn. Gen. Stat. § 52-557n(a)(2)(B) (Supp. 1997); *Gordon v. Bridgeport Housing Auth.*, 544 A.2d 1185, 1189 (Conn. 1988); Me. Rev. Stat. Ann. tit. 14 § 8104-B(3) (West Supp. 1996); *Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me. 1996); Mass. Gen. Laws Ann. ch. 258, § 10(b) (West 1988); *Horta v. Sullivan*, 638 N.E.2d 33, 36-37 (Mass. 1994); *Merrill v. City of Manchester*, 332 A.2d 378, 383 (N.H. 1974); *Haley v. Town of Lincoln*, 611 A.2d 845, 849 (R.I. 1992).* Because this is a dissent, it is unnecessary to choose a detailed definition at this point.

The majority commits us to continue an artificial distinction that this Court created but cannot now endorse. I would understand our inaction if there were no alternatives that protect the legitimate interests of municipalities and yet provide relief for persons seriously injured by municipal negligence where tort liability is appropriate. We do a great injustice to this injured plaintiff, and others in similar situations, by not modernizing our law on municipal liability. I would let this action go to the jury, and dissent from the decision to terminate it prematurely.

---

\* Rhode Island has merged the public-duty rule and the discretionary-function rule. Thus, political subdivisions are immune for "governmental actions that by their nature are not ordinarily performed by private persons." *Haley*, 611 A.2d at 849.

**Johnson, J.,** dissenting.

> It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.

Oliver Wendell Holmes, *The Path of the Law*, 10 Harv. L. Rev. 457, 469 (1897).

The judicially created doctrine perpetuated by today's decision denies plaintiff a legal remedy for his injuries solely because the manhole cover he ran over happens to service only the Town's street and not its sewer system. The majority feels compelled to reaffirm the doctrine, one universally condemned for its unjust results and long-ago discarded by the vast majority of jurisdictions, not because it makes any sense to do so, but rather because it is longstanding and the Legislature has not acted to abolish it.

Neither reason should constrain this Court from acting to abrogate its own laws that no longer have a place in a legal system grounded on modern principles of tort liability emphasizing risk sharing and collective security. This Court, not the Legislature, created general municipal immunity and its accompanying governmental/proprietary distinction, and thus this Court has not only the right but the duty to abolish these concededly unjust laws. No past enactment of the Legislature prevents us from doing so. Rather than explicitly or implicitly endorsing general municipal liability and the governmental/proprietary distinction, the Legislature has enacted statutes that, in most instances, merely sought to limit these judicially created doctrines.

I would abolish general municipal immunity along with the governmental/proprietary distinction, but continue to protect local government bodies from being sued for their legislative, judicial and high-level policy decisions, and for their failure to follow up on regulatory duties imposed to protect the general public. Apart from the instant case, I would implement these changes prospectively to give towns the time to adjust their insurance coverage and the Legislature an opportunity to address the issue of municipal immunity, in the event it elects to do so.

## I.

Municipal immunity is a common-law doctrine associated with sovereign immunity but arising out of a 1788 English case, *Russell v.*

*Inhabitants of Devon*, 100 Eng. Rep. 359, in which the court dismissed an action by an individual claiming that the failure of county inhabitants to repair a bridge caused damages to his wagon. The decision, which came at a time when government as a corporate entity was still in a nebulous state, turned primarily on the fact that the inhabitants of the unincorporated county had no public fund from which to pay the plaintiff. Holding that the law would not impose the burden on individual citizens, the court opined that "it is better that an individual should sustain an injury than that the public should suffer an inconvenience." *Id.* at 362. Although *Russell* was quickly distinguished into oblivion by the English courts (governmental immunity is not the general rule in England), most American courts in the first half of the nineteenth century, beginning with *Mower v. Leiscester*, 9 Mass. 247 (1812), adopted the holding in *Russell*, notwithstanding that the towns involved in those suits were incorporated and had access to public funds. See *Muskopf v. Corning Hosp. Dist.*, 359 P.2d 457, 459 (Cal. 1961); *Molitor v. Kaneland Community Unit Dist. No. 302*, 163 N.E.2d 89, 91 (Ill. 1959); *Long v. City of Weirton*, 214 S.E.2d 832, 852-53 (W. Va. 1975).

But because general municipal immunity is contrary to the basic legal concept that liability follows negligence and to the spirit of constitutional provisions entitling every person to a legal remedy for injuries suffered, the courts continually looked for ways to limit its reach. *Owen v. City of Independence*, 445 U.S. 622, 645-46 n.28 (1980). The principal limitation became the governmental/proprietary distinction. Under that doctrine, municipalities are liable for activities engaged in pursuant to their corporate or proprietary functions serving the needs of their inhabitants, but are immune from liability for activities engaged in pursuant to their governmental functions serving the demands of the state. 18 E. McQuillin, The Law of Municipal Corporations § 53.23, at 304-05 (3d ed. 1993). Although today it is easy to see why courts have been unable to draw such lines, this distinction may have made sense in a time when municipal corporations were seen as semi-private associations chartered by the state to provide local inhabitants with services that no government had previously performed. *Id.* § 53.02.10, at 132.

The courts justified the distinction by arguing that local governments should not be liable for activities by which they derived no profit, that public funds should not be diverted to compensate victims for the torts of governmental employees, and that it was not reasonable to hold municipalities liable for torts committed in the

performance of duties imposed by the state. See Restatement (Second) of Torts § 895C cmt. c (1979). Each of these rationales was roundly criticized by commentators and courts alike, who pointed out the terrible inequities and inconsistencies that resulted from application of a doctrine the United States Supreme Court has labeled "inherently unsound." *Indian Towing Co. v. United States*, 350 U.S. 61, 65 (1955) (refusing to enter nongovernmental/governmental "quagmire," which "has long plagued the law of municipal corporations" and inevitably led to "chaos" and "irreconcilable conflict"); see *Long*, 214 S.E.2d at 856 (describing governmental/proprietary dichotomy as "nightmarish"); E. McQuillin, *supra*, § 53.24.10, at 315 (attempts to fit particular conduct into one of two categories have led to inconsistent, artificial, and inequitable results); W. Keeton, Prosser and Keeton on the Law of Torts § 131, at 1051-52, 1054 (5th ed. 1984) (reasons cited in support of municipal immunity and governmental/proprietary distinction are not sound; there is no rational way to categorize activities of government employees as "governmental" or "proprietary" because "the distinction itself is basically unworkable"); 3 K. Davis, Administrative Law Treatise § 25.07, at 460 (1958) (governmental/proprietary distinction "is probably one of the most unsatisfactory known to the law, for it has caused confusion not only among the various jurisdictions but almost always within each jurisdiction"); Annotation, *Municipal Immunity from Liability for Torts*, 60 A.L.R.2d 1198, 1203 (1958) (attempts to apply distinction "have led to many confusing and contradictory decisions, evoking extensive and bitter criticism from both the courts and legal writers").

As a result of this criticism, most jurisdictions abrogated general municipal immunity between the late 1950s and the early 1980s, recognizing that the community at large rather than the individual should bear the risk of injury resulting from the negligent conduct of government employees. See, e.g., *Parish v. Pitts*, 429 S.W.2d 45, 49 (Ark. 1968) (considered conclusion of legal commentators is that burden resulting from governmental enterprises taken for benefit of community at large should be treated as administrative cost and spread among public receiving benefit of services); *Brinkman v. City of Indianapolis*, 231 N.E.2d 169, 172 (Ind. Ct. App. 1967) (citing trend toward spreading risk and requiring municipalities, like private corporations, to insure themselves); *Williams v. City of Detroit*, 111 N.W.2d 1, 23 (Mich. 1961) (abrogating municipal immunity based on law's "transition from individualism to collective security"); Restate-

ment, *supra*, § 895C cmts. d and f (current of criticism is that losses due to injuries resulting from tortious conduct of governmental employees should fall upon municipality as cost of administering government and be borne by public rather injured person); 18 E. McQuillin, *supra*, § 53.02, at 126 and § 53.02.10, at 133. These judicial decisions were often followed by legislative enactments addressing municipal immunity. E. McQuillin, *supra*, § 53.02.10, at 133. For the most part, those few jurisdictions that retained general municipal immunity and the governmental/proprietary distinction abandoned any pretext of extolling the merits of the doctrines, but rather contended, as the majority does today, that the law should remain in place because of its antiquity. See *id.* (some jurisdictions reluctantly adhered to governmental immunity "out of sheer weight of judicial authority").

To a large extent, Vermont's history of municipal immunity and the governmental/proprietary distinction parallels the above history. Initially, municipal immunity seemed to have been presumed rather than declared in Vermont. In *Baxter v. Winooski Turnpike Co.*, 22 Vt. 114, 123 (1849), this Court took it to be "well settled" that an individual could not maintain a tort action against a town unless a statute had conferred the right to maintain that particular action. In support of this common-law principle, the Court agreed with *Russell* "that it is better that an individual should sustain an injury, than that the public should suffer an inconvenience." *Id.* at 123; see *Welsh v. Village of Rutland*, 56 Vt. 228, 234 (1883) (since *Russell*, settled common-law principle has been that individuals may not sustain actions against towns based on misconduct or nonfeasance of public officers).

Thirty-four years later, in *Welsh*, 56 Vt. at 234, this Court declared that the more "modern" ground supporting municipal immunity was "that these *quasi* corporations are mere instrumentalities for the administration of public government and the collection and disbursement of public moneys, raised by taxation for public uses, and which cannot lawfully be applied to the liquidation of damages caused by wrongful acts of their officers." Applying this rationale, the Court concluded that general municipal immunity should extend only "so far as the acts done are governmental and political in their character and solely *for the public benefit and protection*," but not for acts done pursuant to "*private franchise* powers." *Id.* at 234-35; see *Winn v. Village of Rutland*, 52 Vt. 481, 491-92 (1880) (municipalities are not liable for damages based on conduct arising from municipalities'

state-imposed public duties, as opposed to conduct stemming from powers given in charter to benefit municipalities' inhabitants). Ironically, some of the language in *Welsh* speaks in terms of immunizing only legislative, quasi-judicial or high-level planning and policy decisions, 56 Vt. at 234-35, but this reasonable approach was not followed there or in later cases. And so this Court commenced its much-maligned adherence to the governmental/proprietary dichotomy.

As in other jurisdictions, this Court early on encountered "considerable difficulty . . . in drawing the line which separates governmental activities from those of a corporate or proprietary nature." *Farmer v. Poultney School Dist.*, 113 Vt. 147, 150, 30 A.2d 89, 91 (1943). Not surprisingly, our attempts to apply this doctrine have been fraught with artificial distinctions and inconsistent and inequitable results. See *Marshall v. Town of Brattleboro*, 121 Vt. 417, 423, 160 A.2d 762, 766 (1960) (application of doctrine has produced anomalous results); *Town of Stockbridge v. State Hwy. Bd.*, 125 Vt. 366, 369, 216 A.2d 44, 46 (1965) (governmental/proprietary distinction is "not clearly defined" because basis of distinction is difficult to state and thus no established rule exists for determination of what belongs to which class). For instance, as our law stands now, relief may be obtained from towns (1) when the plaintiff is injured because of ice caused by a leaking water main, but not because of ice caused by water escaping from a fire hydrant during a routine thawing operation conducted by town firefighters, see *Marshall*, 121 Vt. at 423, 160 A.2d at 766; (2) when the plaintiff is injured during the construction of a public playground, but not during the operation of a mechanical rope ski tow in a municipal park, compare *Lemieux v. City of St. Albans*, 112 Vt. 512, 516, 28 A.2d 373, 375 (1942), with *Marshall*, 121 Vt. at 425, 160 A.2d at 767-68; and (3) when the plaintiff is injured while driving over a hole caused by the town's repair of a sewer or water line, but not while driving over a hole caused by the town's repair of a street, see *Hudson v. Town of East Montpelier*, 161 Vt. 168, 178 n.3, 638 A.2d 561, 567 n.3 (1993).

Indeed, the latter anomaly is present in the instant case. The parties debated before the superior court whether the manhole cover that plaintiff ran over was indirectly connected to the sewer system via a storm drain system, in which case plaintiff could seek relief from the Town, or whether the manhole was solely associated with maintenance of the street system, in which case the governmental/ proprietary distinction would bar plaintiff from seeking relief from the Town for his injuries. Because the superior court determined that

the manhole was connected only to street repair, the majority's decision means that plaintiff has no remedy against the Town. Thus, the majority reaffirms a judicially created doctrine that makes plaintiff's right to a legal remedy dependent on the function of the manhole that caused his injury. Cf. *Whitney v. City of Worcester*, 366 N.E.2d 1210, 1215 (Mass. 1977) (person who has been run over by city truck can hardly be expected to appreciate fine nicety of distinction between various functions in which truck driver may have been engaged).

In the majority's view, we must turn a blind eye toward these inequities because our doctrine creating them has been around a long time and has been accepted by the Legislature. The majority adopts the Town's position that the Legislature has explicitly and implicitly endorsed general municipal immunity and the governmental/proprietary distinction by (1) enacting various statutes since at least 1797 that make towns liable for only certain types of tortious acts, e.g., Vt. Rev. Stat. §§ 13-14, at 355 (1797) (towns are liable for damages resulting from their failure to maintain roads and bridges); (2) enacting in 1960, and later amending, a statute that waives municipal immunity to the extent that municipalities purchase liability insurance, see 29 V.S.A. § 1403; (3) enacting in 1961 a tort claims act that addressed state but not municipal liability, see 12 V.S.A. §§ 5601-5606; and (4) enacting in 1986 a statute providing that the participation of towns in intermunicipality insurance agreements is not a waiver of sovereign immunity under 29 V.S.A. § 1403, see 24 V.S.A. § 4946. In taking this position, the majority relies on similar past decisions by this Court declining to abrogate municipal immunity. See *Lomberg v. Crowley*, 138 Vt. 420, 424, 415 A.2d 1324, 1327 (1980) (§ 1403 is clear legislative recognition of judicially created doctrine of governmental immunity); *Roman Catholic Diocese of Vermont, Inc. v. City of Winooski Hous. Auth.*, 137 Vt. 517, 519-20, 408 A.2d 649, 650-51 (1979) (accord); *Town of Milton v. Brault*, 132 Vt. 377, 380, 320 A.2d 630, 632-33 (1974) (accord); *Town of South Burlington v. American Fidelity Co.*, 125 Vt. 348, 350, 215 A.2d 508, 510 (1965) (accord).

Notwithstanding our past disinclination to address the significant inequities caused by general municipal immunity and the governmental/proprietary distinction, we should do so now. See *Molitor*, 163 N.E.2d at 96 (upon determining that judicially created doctrine is unsound and unjust, court has duty to respond; courtroom doors were closed, and likewise may be opened, without legislative help);

*Enghauser Mfg. Co. v. Eriksson Eng'g*, 451 N.E.2d 228, 230-31 (Ohio 1983) (court has not only power but duty to evaluate its own doctrine of municipal immunity in light of reason and logic, and actions, functions and duties of municipalities in twentieth century); see also *Stone v. Arizona Highway Comm'n*, 381 P.2d 107, 113 (Ariz. 1963) (reconsidering previous decisions that deferred issue to legislature, and concluding that court had power to abrogate judicially created immunity); *Haney v. City of Lexington*, 386 S.W.2d 738, 741 (Ky. 1964) (retracting earlier decision deferring to legislature on question of whether to abrogate judicially created immunity doctrine); *Merrill v. City of Manchester*, 332 A.2d 378, 382 (N.H. 1974) (reversing previously stated position that question of expanding municipal liability is matter for legislature); *Ayala v. Philadephia Board of Pub. Educ.*, 305 A.2d 877, 886 (Pa. 1973) (abrogating governmental immunity notwithstanding suggestions in earlier decisions that legislature should take up issue).

The Legislature has never explicitly or implicitly endorsed general municipal immunity or the governmental/proprietary distinction. At best from the Town's perspective, the Legislature has merely recognized the existence of the court-originated doctrine of municipal immunity and enacted statutes that, for the most part, limit its reach. See *Molitor*, 163 N.E.2d at 92 (statutes limiting reach of municipal liability do not demonstrate legislative adoption of general municipal immunity); *Davies v. City of Bath*, 364 A.2d 1269, 1271 (Me. 1976) (statutes intended to curtail harsh effects of municipal immunity did not transform doctrine from court-made rule to legislative policy); *Kitto v. Minot Park District*, 224 N.W.2d 795, 802 (N.D. 1974) (statutes restricting judicially created municipal immunity do not demonstrate legislative approval of doctrine). In contrast to its comprehensive treatment of state sovereign immunity in the Tort Claims Act, 12 V.S.A. §§ 5601-5606, the Legislature's sporadic and patchwork response to the judicial doctrine of municipal immunity, designed for the most part to alleviate the doctrine's harsh results, does not demonstrate its endorsement of general municipal immunity. See *Parish*, 429 S.W.2d at 48 (only comprehensive enactment encompassing entire field would warrant inference that legislature had adopted judicially created doctrine of municipal liability); *Muskopf*, 359 P.2d at 461 (absent comprehensive legislative enactment concerning municipal immunity, as opposed to sporadic statutes affecting doctrine, court is not precluded from abrogating judicially created doctrine). Ironically, it is possible that the Legislature has not acted

to abolish or revamp municipal immunity and the accompanying governmental/proprietary distinction for reasons similar to those cited by the majority — a misplaced deference to a longstanding court doctrine. See *Haney*, 386 S.W.2d at 741 (legislature might expect courts themselves to correct unjust rule that was judicially created); *Jackson v. City of Florence*, 320 So. 2d 68, 73 (Ala. 1975) (accord); *Merrill*, 332 A.2d at 382 (accord).

In addition to its belief that the Legislature has endorsed general municipal immunity and the governmental/proprietary distinction, the majority states that the Legislature is better suited to consider the complex public policy issues surrounding municipal immunity. This may be true, but it should not preclude this Court from abolishing its own universally condemned doctrine while affording the Legislature time to step in and address the subject, if it so chooses. See *Long*, 214 S.E.2d at 859 (although it would be preferable for legislature to speak comprehensively on subject, court should not perpetuate bad law of judicial origin pending fortuity of legislative action). The case law demonstrates that for whatever reasons — perhaps the lack of a powerful or unified voice from persons who have been injured through the negligence of government employees — legislatures in most jurisdictions have not comprehensively addressed issues surrounding municipal immunity until the courts acted first. See E. McQuillin, *supra*, § 53.02.10, at 133; W. Keeton, *supra*, § 131 n.40, at 1055 (judicial decisions initiated shifts from governmental immunity). I suspect that in Vermont, as elsewhere, the Legislature will not act until this Court acts.

II.

While it is clear that general municipal immunity under the governmental/proprietary dichotomy is bad law that should be abolished, the more difficult question is what, if anything, should remain of municipal immunity? Even those courts declaring that they were abrogating municipal immunity stated that municipalities would continue to be immune for their acts or omissions connected with legislative, judicial, and high-level executive policy decisions. W. Keeton, *supra*, § 131, at 1052; e.g., *Nieting v. Blondell*, 235 N.W.2d 597, 603 (Minn. 1975); *Merrill*, 332 A.2d at 383; *Enghauser*, 451 N.E.2d at 232; *McCall v. Batson*, 329 S.E.2d 741, 742 (S.C. 1985). Eventually, in some jurisdictions immunity became dependent on whether the government's acts or omissions were deemed discretionary rather than ministerial, or planning rather than operational, or

whether they were analogous to the duties of private individuals rather than uniquely governmental in nature. See E. McQuillin, *supra*, §§ 53.04.10 and 53.04.20, at 156-57 and 162-63. Sometimes these new dichotomies resulted in the courts creating, over time, governmental immunities more sweeping than when the old governmental/proprietary distinction had been in place. E.g., *Gas Service Co. v. City of London*, 687 S.W.2d 144, 147 (Ky. 1985) (municipal immunity was abrogated fifteen years earlier as "judicially created monstrosity," but gradually reestablished itself under governmental/proprietary distinction to point where it exceeded its original scope).

Rather than focus on formalistic labels that merely serve as conclusions reached after consideration of the relevant factors, see *Hudson*, 161 Vt. at 171, 638 A.2d at 563, we should examine the policy considerations surrounding the issue of governmental immunity. Each of the immunity tests, whether the emphasis is on the discretion of the actor, the level of the decision, or the nature of the conduct, is related to the others and revolves around the same public policy considerations, which in turn, stem primarily from separation-of-powers concerns. To preserve separate and coequal branches of government that best serve the public's interests, government officials must feel that they can use free and independent judgment, without the threat of liability hanging over them, regarding decisions involving the balancing of priorities or the allocation of resources. See *id.* at 173-74, 638 A.2d at 564; *Peavler v. Monroe County Bd. of Comm'rs*, 528 N.E.2d 40, 44-45 (Ind. 1988) (separation-of-powers doctrine forecloses courts from reviewing political, social and economic actions within province of coordinate branches of government; courts are ill-equipped to review, in context of tort law, government's policy decisions involving assessment of competing priorities and weighing of budgetary considerations or allocation of scarce resources); E. McQuillin, *supra*, §§ 53.04.10 and 53.04.20, at 156-57 and 162 (tort law does not provide adequate framework to analyze governmental actions where real questions are not negligence, due care, or reasonableness, but rather social wisdom, political practicability, and economic expediency; decisions requiring balancing of priorities and weighing of budgetary considerations are kinds of political acts that courts ought not to second-guess and that are not readily judged by traditional tort standards).

The goal should be to place municipalities on an equal footing with private corporate entities with respect to responsibility for injuries caused by the common torts of their employees, but to shield them

from liability for acts and omissions that are policy-based or that are adjudicative, legislative, or regulatory in nature. See *Gorrell v. City of Parsons*, 576 P.2d 616, 620 (Kan. 1978). The American Law Institute summarizes this position in Restatement (Second) of Torts § 895C(2), which provides that local government entities are immune from tort liability only for their acts or omissions "constituting (a) the exercise of a legislative or judicial function, and (b) the exercise of an administrative function involving the determination of fundamental governmental policy."

The Restatement also recognizes that some courts have considered quasi-judicial or quasi-legislative regulatory and enforcement activities to fall within § 895C. Restatement, *supra*, § 895C cmt. g; see, e.g., *Bolden v. City of Covington*, 803 S.W.2d 577, 581 (Ky. 1991) (municipality not liable for failure to enforce fire code safety violation, which is quasi-judicial regulatory enforcement activity); *DeBry v. Noble*, 889 P.2d 428, 441 (Utah 1995) (municipality not liable for injuries allegedly caused by licensing or inspection decisions). These courts seek to protect municipalities that have taken on a substantial number of regulatory duties for the protection of the general public from being sued for failing (by not exercising those self-imposed or state-imposed duties) to prevent persons from injuring themselves or being injured by others. See *Gas Service*, 687 S.W.2d at 149. Our case law in analogous contexts supports this position. See *Andrew v. State*, 165 Vt. 252, 258-60, 682 A.2d 1387, 1391-92 (1996) (state not liable under tort claims act's private analog test for its alleged negligent inspection of private workplace); *Johnson v. State*, 165 Vt. 588, 589, 682 A.2d 961, 963 (1996) (state agency not liable to purchasers of motel based on complaint alleging negligent issuance of lodging license to prior owners); *Corbin v. Buchanan*, 163 Vt. 141, 144, 657 A.2d 170, 172 (1994) (no private cause of action exists against municipality for failing to enforce fire code regulation aimed at protection of general public); *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 489, 622 A.2d 495, 499-500 (1993) (state regulatory agency not liable under tort claims act's private analog test for allegedly failing to warn plaintiff of complaints filed with agency regarding plaintiff's agent).

In light of the prior discussion, I would abrogate general municipal immunity and the governmental/proprietary distinction, and adopt Restatement § 895C in its place. In doing so, I would acknowledge our continued support for the position stated in *Corbin* (and analogous case law construing the private analog test) that government

entities are not liable for their failure to enforce regulations adopted to protect the public at large.* I would not, however, follow the superior court's lead and adopt the tort claims act's private analog test because that test, which has not proven to be a model of clarity itself, is part of a comprehensive statute that includes several limitations and exceptions. Inconsistencies and inequities could result from following the test in the context of municipal immunity cases without applying the accompanying statutorily imposed limitations and exceptions.

Without question, the Restatement approach would not provide the Town with immunity in the present case, which concerns a common tort scenario that implicates neither legislative or judicial functions, nor high-level policy decisions or regulatory activities. Of course, § 895C's general principles would have to be refined in future cases by examining and considering various fact patterns while keeping in mind the underlying principles that support limited exceptions to general municipal liability. Although it will not be easy to set forth on a case-by-case basis a principled and cohesive doctrine that is both fair and consistent, it will be far better than allowing to stand a doctrine acknowledged to be inequitable and inconsistent. Because of

---

*Justice Dooley's dissent misstates my position. It is simply not true that, like the majority, I have chosen merely to point out the deficiencies in possible approaches to municipal immunity and leave it for the Legislature to act. I have attempted to analyze the public policy considerations underlying municipal immunity and, based on those considerations, have stated that I would adopt the American Law Institute's restatement of the law in this area, hardly a radical stand creating a crisis situation. I have not suggested, as Justice Dooley indicates, that municipalities should be liable whenever the appropriate response of a government agent could have prevented a personal injury or adverse health consequence. Indeed, as I state above, I continue to support this Court's position in *Corbin v. Buchanan*, 163 Vt. 141, 144, 657 A.2d 170, 172 (1994), that government entities are generally not liable for injuries that they allegedly could have prevented by enforcing regulations aimed at protecting the public at large. Regardless of whether *Corbin* and other cases recently decided by this Court fit within the sphere of the public-duty doctrine, they are consistent with the Restatement's approach. See *Andrew v. State*, 165 Vt. 252, 258-60, 682 A.2d 1387, 1391-92 (1996) (state immune from suit based on negligent inspection of private workplace); *Johnson v. State*, 165 Vt. 588, 589, 682 A.2d 961, 963 (1996) (state immune from suit based on negligent issuance of lodging license); *Corbin*, 163 Vt. at 144, 657 A.2d at 172 (municipality immune from suit based on failure to enforce fire code regulation); *Denis Bail Bonds, Inc. v. State*, 159 Vt. 481, 489, 622 A.2d 495, 499-500 (1993) (state immune from suit based on failure to provide notice of complaints filed with state agency). In short, both Justice Dooley and I have stated what we would offer in place of general municipal immunity and have acknowledged that the Legislature is free to arrive at its own solution; the difference, in my view, is that I would start from a framework of principles, while Justice Dooley would simply adopt, with only a promise of future clarification, formalistic labels that are susceptible to a wide variety of interpretations depending on how broadly they are construed.

its fact-finding power and its ability to weigh social and economic consequences outside a particular adjudicative setting, the Legislature may well be more suited than this Court to address comprehensively issues surrounding municipal immunity; however, this fact should not, and does not, prevent us from acting to rid ourselves of an unfair law that we created.

We could defer to the Legislature's ultimate authority in this area by abrogating general municipal immunity and abolishing the governmental/proprietary distinction prospectively, as many other courts have done, to allow municipalities time to adjust their insurance coverage and to allow the Legislature an opportunity either to enact comprehensive legislation on municipal immunity, to include municipalities within the Tort Claims Act, or to impose other legislative limitations on municipal liability, if it so chooses. See *Becker v. Beaudoin*, 261 A.2d 896, 901 (R.I. 1970) (while courts need not wait on legislature to repudiate unsound judicial doctrine, they should provide legislature opportunity to weigh in on issue more suited to its control); Restatement, *supra*, § 895B cmt. f (stating types of legislatively imposed limitations on governmental liability, including damage limits and notice restrictions).

The courts that have abrogated general municipal immunity have differed on whether to apply their holding prospectively or retroactively. Some courts have followed the general rule of retrospective application, e.g., *Stone*, 381 P.2d at 112; others have taken a "quasi-retroactive" approach that applies their holding only in pending cases in which the municipality is insured for damages stemming from the alleged tort, e.g., *McCall*, 329 S.E.2d at 742-43; perhaps the majority of jurisdictions have applied their holding "quasi-prospectively" — after a future date except for the case at hand, e.g., *Evans v. Board of County Comm'rs*, 482 P.2d 968, 972 (Colo. 1971); and, finally, other courts have taken a strict prospective approach, not even affording relief to the plaintiffs that brought the case, e.g., *Becker*, 261 A.2d at 902-03. I would favor a quasi-prospective approach that would afford relief to the instant plaintiff, but otherwise apply our holding from some future date, say July 1, 1998, after next year's legislative session. This would allow the towns and the Legislature to react to the change in law, but would afford relief to the party challenging the current law.

## III.

There can be no doubt that the effect of governmental immunity is "to sacrifice the injured citizen to the benefit of the public treasury."

*Roman Catholic Diocese*, 137 Vt. at 519, 408 A.2d at 650. This result is not acceptable under modern tort principles favoring collective security unless there are sound public policy reasons to support it. That is not the case under the laws we currently apply to determine whether municipal immunity exists. We have a responsibility to change those laws and to attempt to rectify the gross inequities that they impose on the people of this state. I would affirm the superior court's decision to allow plaintiff to proceed against the Town, but rely on the grounds stated herein. See *Hudson*, 161 Vt. at 170, 638 A.2d at 563 (Supreme Court need not adopt trial court's rationale in affirming its judgment); *Shields v. Gerhart*, 155 Vt. 141, 149 n.8, 582 A.2d 153, 158 n.8 (1990) (Supreme Court will reach issues beyond certified questions when they are fairly raised by order appealed from).